IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| METZ, *et al.*, | ) | CASE NO.: 5:05 CV 1510 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| UNIZAN BANK, *et al.*, | ) | |
| | ) | |
| Defendant, | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |


This case is before the Court on the Defendants' Motions to Dismiss Plaintiffs' Second Amended Complaint.  The Defendants have filed numerous Motions to Dismiss, some filed jointly by multiple defendants and some filed on behalf of individual defendants. The Defendants raise various issues that they claim should result in the dismissal of the Plaintiffs' claims in a myriad of different motions and briefs.  The Court conducted an oral hearing on the statute of limitations issues, and accepted supplemental briefings addressing questions raised during that hearing.  Having read all of the relevant filings, reviewed the Second Amended Complaint, and analyzed the applicable law, this Court comes to the following conclusions.


## PROCEDURAL HISTORY

Plaintiffs filed a class action complaint against the Defendants in this Federal Court on May 27, 2005.  (ECF #1).  They obtained leave to file an Amended Complaint on August 26, 2005 (ECF #275), and again to file a Second Amended Complaint on November 3, 2005.[1]  On November 4, 2005, the Court also granted a motion by JoAnn Floyd, Richard Floyd, Billy Blair and Marlene Blair to intervene as party plaintiffs.  A motion for reconsideration or clarification filed by the original plaintiffs is still pending.  For purposes of this opinion, the briefing submitted by the intervening party plaintiffs has been reviewed and considered on the statute of limitations issue.   The Defendants have filed a myriad of briefs requesting dismissal of Plaintiffs claims.  Common to all of the motions to dismiss is the question of whether Plaintiffs' claims under the Uniform Commercial Code ("UCC") are barred by the applicable statutes of limitation.

Motions to dismiss the Plaintiffs' Complaint remain pending under the following ECF numbers: #168 (Belmont National Bank, Huntington National Bank, Sky Bank, Andover Bank, Farmers National Bank, Republic Savings Bank, Covington Savings & Loan Assn., First Central National Bank, Killbuck Savings Bank Co., Americom Bank, Monroe County Bank, U.S. Bancorp, Hambuco Credit Union, now known as AurGroup Financial Credit Union (via Notice of Joinder, ECF #318), First Indiana Bank (via Notice of Joinder, ECF #308)), #169 (United Fidelity Bank), #170 (Old National Bank), #177 (Wilson & Muir Bank & Trust Co.), #179 (Dollar Bank), #189, 190 (Springs Valley Bank & Trust, Crane Federal Credit Union), #212 (Ohio Valley National Bank), #228 (Tuscarawas School Credit Union), #241 (Richland Bank, First-Knox Bank, Park National Bank, United Bank, N.A., Security National Bank), #273

---

[1]  The parties have changed between the filing of the original Complaint and the Second Amended Complaint.  The Second Amended Complaint dropped the claims against U.S. Bank, Ohio Savings Bank, Liberty Savings Bank, and Sterling Trust, and added U.S. Bancorp and Matrix Capital Bank.

(Mechanics Savings Bank), #299 (Unizan Bank), #300 (JP Morgan Chase Bank, N.A. (successor in interest to BankOne Corp.), Mid-Ohio Securities Corp., Citigroup, Inc., Charles Schwab Co., PNC Bank National, Dover-Philadelphia Federal Credit Union), #307 (Wachovia Bank, N.A., Suntrust Bank, N.A.), #309 (Fifth Third Bank), #312 (First Federal Community Bank), #313 (Third Federal Bank), #343 (Wright-Patt Credit Union, L.C.E. Federal Credit Union), #346 (Keybank), #350 (First Merit, National City Bank, N.A.), #352 (Charter One), #354 (Terre Haute Savings Bank), and #373 (Matrix Capital Bank). [2]  Most of these motions were filed or re-filed after leave to file the Second Amended Complaint was granted by the Court.  However, some were submitted in response to the original Complaint or the First Amended Complaint.  In so far as those motions address the statute of limitations issue, however, nothing in the Second Amended Complaint altered the question at issue, and they shall be considered as if they had been re-filed following the filing of the Second Amended Complaint.  In addition, there have been two motions filed specifically to dismiss the Intervenors' Complaint. ECF # 361 (National City Bank, N.A.); ECF #363 (Hambuco Credit Union).  These motions also incorporate the same arguments and issues raised in the motions to dismiss the Plaintiffs' Second Amended Complaint.

Plaintiffs, in response to the motions to dismiss on statute of limitations grounds, filed a Motion to Certify the Question of the Statute of Limitations for ORC §§1303.16 & 1304.09 to the Ohio Supreme Court.  (ECF #266).  This motion also incorporated the Plaintiffs arguments against dismissal on statute of limitations grounds.  A hearing was held before the Court on September 14, 2005, following which the parties were given the opportunity to file supplemental

---

[2] Many of these motions to dismiss incorporate earlier filed motions and memorandums in support.

briefs. The pending motions to dismiss have now been fully briefed and are ready for consideration.

## **PARTIES**

The Plaintiffs are individuals who, between 1998 and 1999 purchased promissory notes in either Serengeti Diamonds U.S.A., Inc. ("Serengeti") and/or in Lomas De La Barra Development Corporation, Inc., ("Lomas") and who claim to have been injured when their checks were improperly paid into depositary bank accounts opened, operated, and/or maintained by individuals without authority to open, operate, and /or maintain said accounts on behalf of Serengeti or Lomas.

There are three main categories of Defendants in this action.  The first are the Ohio Drawee Banks.  They include: Unizan Bank (individually and as corporate successor by merger of First National Bank of Zanesville and County Savings Bank), Fifth Third Bank (individually and as corporate successor to Citizens Bank and The Strongsville Savings Bank), National City Bank (individually and as corporate successor of Provident Bank),  Charter One Bank,  Key Bank (individually and as corporate successor of Society Bank),  Huntington National Bank, J.P. Morgan Chase Bank (as successor by way of merger with Bank One),  FirstMerit Bank, Andover Bank, Mid-Ohio Securities Corporation, Third Federal Bank, Dollar Bank, Mechanics Savings Bank, Farmers National Bank (as parent of Farmers National Bank of Canfield), U.S. Bancorp (as corporate successor by merger of Star Bank & Firstar), Covington Savings and Loan Association, Park National Bank (individually and as corporate successor to First-Knox Bank and United Bank, N.A.), First Central National Bank, Security National Bank, Republic Savings Bank, Wright-Patt Credit Union,  Belmont National Bank, Citigroup, Inc., Smith Barney

(division of Citigroup Global), Charles Schwab & Co, Inc., Killbuck Savings Bank Co., PNC Bank National, Richland Bank, Tuscarawas Schools Credit Union, Inc., Sky Bank (as corporate successor by merger of Metropolitan Bank and Trust Co., and Americom Bank and the Citizens Banking Company), First Federal Savings Bank of Dover (otherwise known as First Federal Community Bank), Dover-Phila Federal Credit Union, L.C.E. Federal Credit Union, and AurGroup Financial Credit Union (formerly known as Hambuco Credit Union).   Only Count One of the Second Amended Complaint applies to the Ohio Drawee Banks.

The second category includes Non-Ohio Drawee Banks.  The Non-Ohio Drawee Banks include:  Wachovia National Bank (individually and as corporate successor by merger of First United Bank and/or First United Bancorp and First Union)(Florida),  Matrix Capital Bank (New Mexico), United Fidelity Bank (Indiana), Ohio Valley National Bank of Henderson (Kentucky), Wilson & Muir Bank & Trust Co. (Kentucky), Old National Bank (individually and as the parent of Dubois County Bank) (Indiana), Springs Valley Bank & Trust (Indiana), Federal Credit Union (Indiana), First Indiana Bank (individually and as corporate successor to Mid-West Federal Credit Union)(Indiana), Monroe County Bank (Indiana), State Street Bank (Massachusetts), and Terre Haute Savings (Indiana). [3]  The Non-Ohio Drawee Banks are not located in Ohio and have not all consented to the jurisdiction of this court.  Nonetheless, some of these banks have appeared and have addressed the statute of limitations issue under the UCC 4-111, as codified in Ohio and by the individual states in which they are located. Of these, Matrix Capital Bank, Federal Credit Union, Ohio Valley National Bank, Springs Valley Bank & Trust, United Fidelity Bank, and Wilson & Muir Bank & Trust Co. have challenged this Court's ability to exercise

---

[3] Texas bank Sterling Trust Company was included as a Non-Ohio Drawee Bank in the Original Complaint, but has since been dismissed from the action.  See ECF # 340.

personal jurisdiction over them.  State Street Bank has filed no response which is consistent with a failure to accept this Court's exercise of  personal jurisdiction.  Only Count One of the Second Amended Complaint applies to the Non-Ohio Drawee Banks.

The final category of Defendants is made up of Defendants Unizan Bank, Fifth Third Bank, Wachovia Bank, N.A., and SunTrust Bank, N.A. (hereinafter the "Depositary Banks"). Unizan Bank and Fifth Third Bank are Ohio banks. Wachovia Bank and SunTrust Bank are Florida Banks.  Counts Two through Eleven apply to these Depositary Banks.


## FACTS[4]

The Second Amended Complaint raises eleven claims under the Uniform Commercial Code ("UCC") and Ohio common law.  The common law claims include allegations of fraud, conversion, conspiracy, negligence, and aiding and abetting.  The only cause of action claimed against the Drawee Banks is Count One which alleges that Plaintiffs' checks were not paid as authorized by the defendant Drawee Banks, and consequently were not "properly payable" items.  Plaintiffs, therefore allege that the amount of these items should have been refunded or re-credited to the Plaintiffs and that no such refund or re-credit has ever been issued.  This claim is brought pursuant to O.R.C. § 1304.30 (2005)(UCC 4-401).  All other claims are brought against the Depositary Banks.


## STANDARD OF REVIEW

---

[4]  The facts as stated in this Memorandum and Order are taken from the Second Amended Class Action Complaint and should not be construed as findings of this Court.  In a  motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true the facts set forth by the non-moving party, in this case, the Plaintiff.

On a motion brought under Fed. R. Civ. P. 12(b)(6), this Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808 (3rd Cir. 1990).

In evaluating a motion for dismissal under Rule 12(b)(6), the district court must "consider the pleadings and affidavits in a light most favorable to the [non-moving party]." Jones v. City of Carlisle, Ky., 3 F.3d. 945, 947 (6th Cir. 1993) (quoting Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980)).  However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. See City of Heath, Ohio v. Ashland Oil, Inc., 834 F.Supp 971, 975 (S.D.Ohio 1993).

This Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41 (1980).  In deciding a Rule 12(b)(6) motion, this Court must determine not whether the complaining party will prevail in the matter but whether it is entitled to offer evidence to support the claims made in its complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## ANALYSIS

## I.    Choice of Law Issues

The remaining Non-Ohio Banks are based in Florida, Indiana and Massachusetts.  They include Wachovia Bank (Florida), Sun Trust Bank (Florida) Old National Bank (Indiana), First Indiana Bank (Indiana), Monroe County Bank (Indiana), State Street Bank (Massachusetts), and Terre Haute Savings (Indiana).  A federal court, sitting in diversity, applies the choice of law

rules of its forum state to determine what substantive law governs the case. Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3 (1975); Nixon v. Waste Mgmt, Inc., 2005 U.S. App. LEXIS 25311 (6th Cir. Nov. 1, 2005).  Plaintiffs argue that pursuant to O.R.C. § 1304.02(B), the non-Ohio banks are subject to the laws of their individual states.  O.R.C. § 1304.02(B) states:

 "The liability of a bank for action or non-action with respect to any item handled by it for the purposes of presentment, payment, or collection is governed by the law of the place where the bank is located."

The substantive law applied to the above listed Defendants shall, therefore, be governed by the law of the state in which each bank is located.  However, while this statute governs the substantive law that should be applied to the non-Ohio banks in order to determine liability, it does not control which statute of limitations rules apply to these defendants.  For choice of law purposes (as opposed to Erie doctrine purposes) statutes of limitations are considered procedural laws.  Sun Oil Co. v. Wortman, 486 U.S. 717, 726-27 (1988).   A federal court, sitting in diversity,  may, therefore, apply the statute of limitations of its forum state, even to those claims which, according to the choice of law rules are subject to the substantive law of another state.  Id. at 722.   In Ohio, the statute of limitations of the forum state are applied even if liability is determined by the use of another state's substantive law. See, e.g., Charash v. Oberlin College, 14 F.3d 291, 299 (6th Cir. 1994)(cited by Schwartz v. Cincinnati Museum Ass'n, 2002 U.S. App. LEXIS 7139.   Therefore, all of the Defendant Banks, whether Ohio based, or non-Ohio based, are subject to the same statute of limitations, which is to be determined based on Ohio law.

## II.   <u>Statute of Limitations</u>

A.      Motion to Certify the Statute of Limitations Question under O.R.C. §§ 1303.16 and 1304.09 to the Ohio Supreme Court.

Federal courts have the ability to certify questions of law to the Ohio Supreme Court when "there is a questionable Ohio law that may be determinative of the proceeding and for which there is no other controlling precedent in the decision of [the Ohio Supreme Court]." Ohio Sup. Ct. R. Prac. XVIII, § 1; see also Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F.3d 733, 744 (6th Cir. 1999).   That is not to say, however, that a federal court should certify any question that has not been specifically addressed by the Ohio Supreme Court.  The decision to certify a question to the Ohio Supreme Court is within the district court's sound discretion. Novel or unsettled questions of state law may be appropriate for certification where certification will save time, energy and resources, or where there are conflicting federal interpretations of an important state law question which would otherwise evade state court review.  See Arizonans for Official English v. Arizona, 520 U.S. 43, 77 (1997);  Geib v. Amoco Oil Co., 29 F.3d 1050, 1060 (6th Cir. 1994.  However, this course of action should not be invoked merely because it may be difficult for the court to ascertain what the local law provides.  See Duryee v. United States Dep't of the Treasury, 6 F. Supp. 2d 700, 704 (S.D. Ohio 1995).  As this Court has found there to be sufficient guidance in the current state and federal law to allow it to make a reasoned and principled decision on the statute of limitations issue under Ohio law, Plaintiffs' Motion to Certify the Question of the Statute of Limitations for ORC §§ 1303.16 and 1304.09 to the Ohio Supreme Court (ECF #266) is hereby denied.

B.      Applying the Statutes of Limitation to the UCC Claims

The parties agree that the Plaintiffs' claims are based on events which occurred in 1998 and 1999, and that the original Complaint was not filed until May 27, 2005.   The parties also agree that Plaintiffs' UCC claims (Counts One, Eight, Nine and Ten) are subject to the three-year statute of limitations set forth in Articles 3 and 4 of the Uniform Commercial Code ("UCC") and codified at O.R.C. §1303.16 and O.R.C. §1304.09.[5]  Both of these provisions provide that an action shall be brought within three years of when the cause of action "accrues." The dispute between the parties centers on how to determine when the Plaintiffs' cause of action accrued.

 Article 3 provides that:

Unless governed by other law regarding claims for indemnity or contribution, any of the following actions shall be brought within three years from when the action accrues:

(1)     An action for conversion of an instrument, money had and received, or a similar action based on conversion;

(2)     An action for breach of warranty;

(3)     An action to enforce an obligation, duty or right arising under this chapter and not governed by this section.

O.R.C. §1303.16.  Article 4, Section 1304.09 provides that:

An action to enforce an obligation, duty or right arising under Sections 1304.01 to 1304.04 of the Revised Code shall be brought within three years after the cause of action accrues.

Neither of the applicable statutes of limitation defines the word "accrues."  The current syllabus law in Ohio is that "[a]bsent legislative definition, it is left to the judiciary to determine

---

[5]  Count 1 is brought pursuant to O.R.C. §1304.30 (2005)(UCC 4-401). Claims brought under this statutory provision are subject to the statute of limitations set forth in O.R.C. § 1304.09 (2005).

when a cause "arose" for purposes of statutes of limitations."   O'Stricker v. Jim Walter Corp., 4

Ohio St.3d 84, syllabus ¶ 1, 447 N.E.2d 727 (1983).   The Defendants argue that, for purposes of

applying a statute of limitations, unless otherwise specified,  a cause of action accrues at the time

the wrongful act is committed.  Plaintiffs, on the other hand, urge the application of the

"discovery rule," an exception to the general principle set forth above, under which a cause of

action accrues only after a plaintiff discovers, or in the exercise of reasonable care should have

discovered, that he or she was injured by the wrongful conduct of the defendant.

The Defendants cite two Ohio appellate cases that addressed whether the discovery rule

applies to a claim for conversion of a negotiable instrument.  See Palmer v. Mfg. and Supply,

Inc. v. BancOhio Nat'l Bank, 637 N.E.2d 386 (1994), cert. denied 69 Ohio St.3d 1488, 635

N.E.2d 43 (1994); Brentar v. Rupert, No. 73903, 1998 WL 895285 (Ohio App. 8th Dist.  Dec. 17,

1998).  Neither court applied a discovery rule in these cases.  However, neither of these cases

involved the statutes of limitations that are at issue in this case.  At the time these cases were

decided, the Ohio Revised Code did not have specific statutes of limitations for conversion

claims under the UCC.  Similarly, the Plaintiffs countered the Defendants arguments by citing

Geraldo v. First Dominion Mutual Life Ins. Co., 2002 Ohio App. LEXIS 4752 (Ohio App. 6th

Dist. Sept. 6, 2002) which also involved a statute of limitations issue on a claim for conversion

of a negotiable instrument, but which also applied a different statute of limitations than is at

issue in this case.   The Court in Geraldo applied the discovery rule to postpone the running of

the statute of limitations, but the statute of limitations at issue in that case expressly incorporated

the rule into the statutory language.  See O.R.C. 2305.09(D).   Neither side has cited, and this

Court is aware of no Ohio case that has specifically addressed whether the discovery rule applies

to the statute of limitations set forth in O.R.C. §1303.16(G) and O.R.C. §1304.09, the statutes at

issue in this case.

These and other Ohio cases do give us a clue, however, as to what reasoning the Ohio courts have looked to when trying to determine if the discovery rule is appropriate in different situations.  Palmer, in refusing to apply a discovery rule, focused on the objectives of the UCC in promoting negotiability, finality, and uniformity in commercial transactions.  Palmer and Bentar also looked to authority outside Ohio and found that the "great bulk of authority runs very strongly against" the application of the discovery rule for claims involving the theft or conversion of negotiable instruments.[6]  Palmer, Bentar, and Geraldo all considered the legislative intent behind the applicable statute of limitations.  The Ohio Supreme Court has also set forth criteria to be considered in deciding this issue.

In deciding which cases are appropriate for a discovery rule, the Ohio Supreme Court has balanced the rationale underlying the statute of limitations with the interests and equities invoked in situations where the injury complained of may not manifest itself immediately.  See, e.g., O'Stricker v. Jim Walter Corp., 4 Ohio St.3d 84, 447 N.E.2d 727; Collins v. Sotka, 81 Ohio St.3d 506;  Harris v. Liston, 86 Ohio St.3d 203, 714 N.E.2d 377.   The Court also considers the legislature's intent when determining whether a statute of limitations should be extended through the application of a discovery rule.  See, e.g., Investors Reit One v. Jacobs, 46 Ohio St.3d 176, 181, 546 N.E.2d 206, 211 (1989).  Further, when considering issues of first impression arising under the UCC, the Ohio Supreme Court has indicated that "it is desirable to conform our interpretations of the Uniform Commercial Code to those of our sister states" and that, therefore, it will consider "the authorities from other states more fully than is customary."  Edward

_____

[6] Without going into detail on each case cited by the Plaintiffs as a counter to this argument, the Court notes that it has read and reviewed each of the cited cases and found them to be generally not on point and universally unpersuasive.

Kemmler Mem'l Found. v. 691/733 East Dublin-Granville Road Co., 62 Ohio St.3d 494, 499, 584 N.E.2d 695, 698 (1992).

As Plaintiffs point out, the Ohio Supreme Court has been expanding the scope of the discovery rule over the course of the years.  The Court has applied the discovery rule in wrongful death cases; latent property damage cases; medical and legal malpractice cases; wrongful adoption, fraud, negligent credentialing, drug or toxic exposure, and child sexual abuse cases. See, e.g., Collins v. Sotka, 81 Ohio St.3d 506 (1998); NCR Corp. V. U.S. Mineral Products Co., 72 Ohio St. 3d 269, 271, 649 N.E. 2d 175, 176-177 (1995); Melnyk v. Cleveland Clinic, 32 Ohio St.2d 198, 290 N.E.2d 916 (1972); Zimmie v. Calfee, Halter & Griswold, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989); Burr v. Stark Cty. Bd. Of Comm'rs., 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986); Investors REIT One v. Jacobs, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989);  Browning v. Burt, 66 Ohio St. 3d 544, 613 N.E.2d 993 (1993);  Burgess v. Eli Lilly & Co., 66 Ohio St.3d 59, 609 N.E.2d 140 (1993); O'Stricker v. Jim Walter Corp., 4 Ohio St.3d 84, 447 N.E.2d 727 (1983); Ault v. Jasko, 70 Ohio St.3d 114, 637 N.E.2d 870 (1994).  Nonetheless, in many of these and even more recent cases, the Ohio Supreme Court has reiterated that the general rule remains that "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act is committed."  See, e.g., Harris v. Liston, 86 Ohio St.3d 203, 205, 714 N.E.2d 377, 379 (1999); Collins v. Sotka, 81 Ohio St.3d at 507, 692 N.E.2d at 582.

In each of the above cases, more was at stake for the Plaintiffs than just monetary losses. Each involved some form of personal injury, injury to real property, or a serious deprivation of personal rights (i.e. a right to competent legal representation or competent medical care).   In the latent injury cases, no damage or injury even existed until some point after the wrongful act had occurred.  None of these cases in which the discovery rule was applied involved commercial

transactions.  The harm to the Plaintiffs in this case is commercially based and purely financial.
Further, whether or not the Plaintiffs were aware of the loss, the damage or harm they allege
occurred at the time the Defendants committed the alleged wrongful acts.  The Plaintiffs would
have lost access to their funds when checks were improperly deposited into someone else's
account, whether or not Plaintiffs were notified of the loss at the time.  Plaintiffs have cited no
Ohio cases where, in the absence of fraud,  the discovery rule has been judicially adopted to
extend the statute of limitations for a purely financial injury under the UCC.

  The balance of interests and equities in those cases where the Ohio Supreme Court has
applied a discovery rule weighs more in favor of the individuals than it does in a purely
commercial transaction governed by the UCC.   The UCC was enacted to advance the uniformity
of commercial transactions and to provide finality and predictability in the trade and transfer of
commercial paper and other negotiable instruments in order to encourage commercial
transactions.   "Strict application of the limitations period, while predictably harsh in some cases,
best serves the twin goals of swift resolution of controversies and 'certainty of liability'
advanced by the UCC."  Palmer, 93 Ohio App. 3d at 24, 637 N.E.2d at 390, citing Husker News
Co. v. Mahaska State Bank, 460 N.W.2d 476, 479 (Iowa 1990).  See also John Hancock
Financial Services, Inc., v. Old Kent Bank, 346 F.3d 727, 734 (6th Cir. 2003)("'strong public
policy favoring finality in commercial transactions, protecting a defendant from stale claims, and
requiring a plaintiff to diligently pursue his claim outweigh the prejudice to plaintiffs and
militate against applying the discovery rule in the context of commercial conversion cases.'"
(citations omitted)); Menichini v. Grant, 995 F.2d 1224 (3d Cir. 1993)("Where a party not
engaging in fraudulent concealment asserts the statute of limitations defense, most courts have
refused to apply the discovery rule to negotiable instruments, finding it inimical to UCC policies

of finality and negotiability.")(reasoning adopted by <u>John Hancock Financial Services, Inc. v. Old Kent Bank</u>, 346 F.3d at 734).  Absent fraudulent concealment, it seems that the three year limitations period is not an unreasonable time frame within which a Plaintiff, exercising due diligence, should be able to discover their financial loss and bring an action for conversion.  See <u>Palmer</u>, 93 Ohio App. 3d at 24, 637 N.E.2d at 390; <u>Kuwait Airways Corp. v. Am. Sec. Bank</u>, 890 F.2d 456 (C.A.D.C. 1990).   Therefore, the balance of interests and equities in this case weighs against the application of the discovery rule.

It also seems clear that under these circumstances, the Ohio General Assembly did not intend to delay the running of the particular statutes of limitations at issue in this case until after the discovery of an injury.  If the legislature had deemed it appropriate, it could have included an express provision in the UCC that would toll any statute of limitations until the harm was discovered.  It made no such general provision, but did provide for this type of equitable tolling under certain  circumstances.  See,  R.C. 1304.18 (UCC 4-208); R.C. 1304.17 (UCC. 4-207).  Those circumstances, however, are not present in the instant action; and the UCC provisions providing for the application of the discovery rule are not applicable to the claims raised in the Plaintiffs' Complaint.

Plaintiffs argue that there is no indication that the General Assembly meant to include a discovery rule in some provisions of the UCC but not in others.  The Intervening Plaintiffs argue that because the official commentary following O.R.C. § 1303.16 indicates that Ohio law may dictate circumstances under which the running of a period of limitations may be tolled, that this indicates an intent to apply the discovery rule to statute of limitations set forth in the UCC.

However, the clear language of the statute belies both of these arguments.  The General Assembly, in enacting the UCC, specifically chose to toll the running of the statute of limitations

until after the injury was discovered in some instances but not in others.  The fact that the

General Assembly failed to include language establishing a discovery rule under the sections

applicable to the instant action "argues strongly that it was not the legislature's intent to apply

the discovery rule to such claims."  Investors Reit One v. Jacobs, 46 Ohio St.3d at 181, 546

N.E.2d at 211, citing Kirsheman v. Paulin, 155 Ohio St. 137, 146, 98 N.E.2d 26, 31 (1951).

"The legislature's express inclusion of a discovery rule for certain [claims] . . . implies the

exclusion of other torts arising under the statute . . . ."  Id.  While the official commentary may

reinforce the fact that courts can toll the running of the statute of limitations under certain

circumstances, for example in the case of fraud, duress, mistake, bankruptcy, or where the

Plaintiff had no capacity to contract, see O.R.C. § 1301.03, there is nothing in the language of

the statute or in the official commentary which would lead this Court to believe that the

legislature intended to apply the discovery rule to the limitations periods set forth in O.R.C.

§1303.16(G), or O.R.C. § 1304.09.

Plaintiffs also argue that the legislature's failure to expressly provide for a discovery rule

in the applicable statutes of limitations does not imply an intent to preclude the discovery rule

because there are other sections of the adopted commercial code that expressly preclude the

application of the discovery rule.  Therefore, Plaintiffs argue that it makes as much sense to

conclude that the legislature would have expressly precluded application of the discovery rule if

that is what it had intended, as it does to follow the Defendants' logic and conclude that the

legislature would have expressly provided for the application of the discovery rule if that was

what it had intended.  This argument does have some appeal.  However, if the legislature had

expressly defined when a cause of action accrues under the applicable statute of limitations,

there would be no question for this Court to decide.  In contrast, as stated above, the absence of a

definition of when a cause of action accrues under the applicable statute of limitations is what makes this a question for the Court.   Once it becomes a question for the Court, all of the other considerations discussed above come into play.   The general and longstanding rule in Ohio is that a cause of action accrues at the time the harm is committed and not when it is discovered. The discovery rule is an exception, and there is no compelling justification for applying that exception under these circumstances.

Further, looking to other states who have faced this issue, it appears that the great majority of authority runs against the application of the discovery rule under similar circumstances.  See, e.g.,  Rodrigue v. Olin Employees Credit Union, 406 F.3d 434, 445-47 (7th Cir. 2005)(surveying cases analyzing why the discovery rule is not applicable to UCC claims); Menichini v. Grant, 995 F.2d 1224, 1230 (3d Cir. 1993)("most courts have refused to apply the discovery rule to negotiable instruments, finding it inimical to UCC policies of finality and negotiability"); Pero's Steak & Spaghetti House v. Lee, 90 S.W.3d 614, 624 (Tenn. 2002)(reviewing cases which hold the discovery rule is not applicable to UCC claims).

This Court is bound to apply state law in accordance with the currently controlling decisions of the state's highest court.  Bailey Farms, Inc. v. NOR-AM Chemical Co., 27 F.3d 188, 191 (6th Cir. 1994).  Where the state supreme court has not specifically addressed a particular issue, this Court is charged with anticipating how that court would rule.  Id. Therefore, taking into consideration the factors considered by the Ohio Supreme Court in determining whether the discovery rule is appropriate, this Court has looked to the rationale underlying the statute of limitations, the interests and equities invoked where the injury was not immediately discovered, the language and intent of the General Assembly in enacting the applicable statutes of limitation, and the bulk of authority in other jurisdictions.  Taking each of

these factors into account and weighing the overall balance of interests,  this Court finds that Ohio law does not support the application of the discovery rule to toll the running of the limitations period contained in O.R.C. §1303.16(G) or O.R.C. §1304.09.

As each of the bad acts alleged against Defendants was committed between 1998 and 1999, the statutes of limitations on each of the corresponding UCC claims would have expired no later than 2002.  This lawsuit was not filed until May 27, 2005.  Therefore, absent allegations of fraudulent concealment, all of the Plaintiffs UCC claims are barred by the statutes of limitations set forth in  O.R.C. §1303.16(G) or O.R.C. §1304.09.


C.  Fraudulent Concealment

The doctrine of fraudulent concealment tolls the statute of limitation as to those defendants who committed or participated in the concealment.  See, e.g. Barker v. American Mobil Power Corp., 64 F.3d 1397, 1402 (9th Cir. 1995); Greenwald v. Manko, 840 F. Supp. 198, 203 (E.D.N.Y. 1993); Griffin v. McNiff, 744 F. Supp. 1237, 1256 n.20 (S.D.N.Y. 1990), aff'd 996 F.2d 303 (2d Cir. 1993); Bingham v. Zolt, 683 F. Supp. 965, 975 (S.D.N.Y. 1988).  The Plaintiff must affirmatively plead facts supporting a claim for fraudulent concealment against each specific Defendant who allegedly participated in the concealment in order to state a claim against that Defendant which would survive an otherwise expired statute of limitations.  See, e.g., Pedraza v. United Guaranty Corporation, 114 F. Supp. 2d 1347, 1356 (S.D. Ga. 2000); O' Brien v. National Property Analysts Partners, 719 F. Supp. 222, 232 (D.N.Y. 1989).


III.    **Personal Jurisdiction Issues**

Personal jurisdiction requirements are waivable rights.  Burger King Corp. v. Rudzewicz,

471 U.S. 462, 472 , n.14 (1985).  Those Defendants who did not challenge personal jurisdiction in their first responsive pleading have waived this issue.  Fed. R. Civ. P. 12(h)(1); <u>see</u>, <u>e.g.</u>, <u>Taubman Co. v. Webfeats</u>, 319 F.3d 770, 773 (6th Cir. 2003); <u>Reynolds v. Int'l Amateur Athletic Fed'n</u>, 23 F.3d 1110, 1120 (6th Cir. 1994); <u>In Re Wolverine Radio Co.</u>, 930 F.2d 1132, 1137 n.5 (6th Cir. 1991).  Although not all of the non-Ohio Banks have challenged whether this Court has personal jurisdiction to hear the claims against them, several have.  These include: Matrix Capital Bank (ECF # 373), Federal Credit Union (Crane Division) (ECF #189), Ohio Valley National Bank (ECF # 212), Springs Valley Bank & Trust (#189), United Fidelity Bank (ECF # 169), and Wilson & Muir Bank & Trust Co. (ECF # 177).[7]  Based on the current information before the Court, these Defendants do not have sufficient contacts to allow this Court to exercise personal jurisdiction over them.

However, at the close of the hearing held before this Court on September 14, 2005, the Plaintiffs indicated that they had not responded to all of the issues collateral to the statute of limitations which were raised by the Defendants in their responsive pleadings.  One of the issues left unaddressed by the Plaintiffs was the issue of personal jurisdiction.  At the request of the Plaintiffs, and with the acquiescence of the Defendants, the Court indicated at that time that it would decide the statute of limitations issue before requiring Plaintiffs to respond to those other issues.   The Court's decision on the statute of limitations issue, however, has rendered a response to the jurisdictional issue unnecessary.

Even if this Court could exercise personal jurisdiction over the non-Ohio Drawee Banks listed above, all of the claims against those banks would be dismissed along with the claims against all of the other drawee banks, based on the statue of limitations.  In order to conserve the

---

[7]  Only State Street Bank has yet to file or join in any responsive pleading.

resources of both parties and the Court, while allowing for a formal disposition as to the claims against these Defendants, the Motions to Dismiss on the basis of Personal Jurisdiction will be granted without response with the understanding that had a response to the Motions been allowed, and had that affected the outcome of the analysis of personal jurisdiction, the claims against these defendants would nevertheless eventually be dismissed because the statute of limitations has expired on Plaintiffs claims against them.

## IV.    <u>Arbitration Issues</u>

Key Bank filed a Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint Or, In the Alternative, to Compel Arbitration.   (ECF #346).  In that motion, Key Bank seeks to compel arbitration with the named Key Bank customer, Gene Aungst, and any and all other putative class members who are customers of Key Bank.  Key Bank argues that its customer agreements include a mandatory arbitration clause covering claims of this type, and attaches affidavits from Pam MawHorr, Rosemary Klee, and Ray Freas attesting to the fact that Gene Aungst signed a "signature card agreement" acknowledging receipt of the Deposit Account Agreement and his assent to be subject to that agreement; authenticating the arbitration clause in the Deposit Account Agreement effective June 17, 1996, and the revised arbitration clause that took effect in 2004.

This filing came after the September 14, 2005 hearing in which the Court had indicated that responsive filings need not be filed on collateral issues until after the statute of limitations issue had been decided.  As with the personal jurisdiction issues, this attempt to streamline the case and prevent the unnecessary expenditure of resources by the parties, has put the Court in a unique position of having to decide the merits of an issue that affects all of the Defendants

without having first evaluated its jurisdiction over each specific Defendant.

Key Bank filed a Motion that requested dismissal on the statute of limitations ground, or in the alternative, dismissal and referral to arbitration.  Normally the party requesting arbitration cannot both ask this Court to rule in its favor, and in the alternative, challenge its subject matter jurisdiction.  The Court is generally bound to decide the jurisdictional issues (i.e. arbitration) first.  However, under the current circumstances it would seem to be a waste of time and resources for all involved to require the Plaintiffs to respond to a motion to compel arbitration when, even if they win their argument and are able to avoid arbitration, their claim against Key Bank will eventually be dismissed.   The statute of limitations bars all of the Plaintiffs UCC claims against all of the Drawee Defendants, and the claim against Key Bank is no exception.  Therefore, in the very limited and unusual circumstances before the Court on this case, in order to promote equity and conservation of resources for all involved, the Court will grant Key Bank's motion to Dismiss on the statute of limitations grounds without addressing the alternate argument relating to the arbitration agreement.


## V.    UCC Displacement of Tort Claims Against the Depositary Banks

The Depositary Banks argue that the common law claims of fraud, conspiracy to commit fraud, conversion, negligence and money had and received (Counts Six, Seven and Eleven) have been displaced by Ohio's codification of the UCC.   The Ohio Supreme Court has held that codification typically displaces and precludes the common law that precedes it.

Where the General Assembly has codified the law on a subject, such statutory provisions are to govern to the exclusion of the prior non-statutory law unless there is a clear legislative intention expressed or necessarily implied that the statutory provisions are merely cumulative.

<u>Bolles v. Toledo Trust Co.</u>, 144 Ohio St. 195 (1944)(syllabus ¶ 13).

The codification of the UCC includes an express provision that indicates some common law claims are displaced by UCC and some are not.  Ohio Revised Code §1301.03 (UCC 1-103) provides that:

> Unless displaced by the particular provisions of Chapters 1301., 1302., 1303., 1304., 1305., 1307., 1308., 1309., and 1310. of the Revised Code, the principals of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement their provisions.

Articles 3 and 4 of the UCC establish the standard of care applicable to a bank's handling of a negotiable instrument, thus displacing common law negligence in this area.  See O.R.C. §§ 1303.44 and 1303.49.  Ohio Revised Code §1303.60(A) creates a statutory claim for conversion of a negotiable instrument, and O.R.C.  § 1303.16(G)(1) provides a statutory claim for money had and received.  Claims for negligence in the handling of a negotiable instrument, conversion of a negotiable instrument and money had and received are, therefore, displaced by particular provisions of Chapter 1303 of the Revised Code.

Aside from the listed causes of action in O.R.C. § 1301.03 which are expressly made cumulative, (except where otherwise stated), the Ohio codification of the UCC incorporates a statement of purpose which also shows a legislative intent to supplant the common law in most instances.  Ohio Revised Code § 1301.02(B) states that the underlying purpose and policy of the UCC, as adopted by the Ohio legislature is "(1) [t]o simplify, clarify, and modernize the law governing commercial transactions; (2) [t]o permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; [and] (3) [t]o make uniform the law among various jurisdictions."  This purpose cannot be served if parties can avoid the requirements of the UCC by pleading common law causes of action along with their UCC claims

for the same alleged transgressions.  See <u>Olympic Title Ins. Co. v. Fifth Third Bank of Western</u> <u>Ohio</u>, No. 20145, 2004 WL 2009285 at *6 (2nd Dist. Ohio Ct. App. Setp. 10, 2004); <u>Amzee</u> <u>Corp.v. Comerica Bank-Midwest</u>, No. 01AP-465, 2002 WL 1012998, at *9-10 (Ohio App. May 21, 2002)(holding that claims for conversion, money had and received, money paid by mistake, and unjust enrichment were displaced by the UCC).

Therefore, under both the express terms of O.R.C. § 1301.03, and the necessarily implied intention of the Ohio legislature in their enactment of the UCC, the Plaintiffs claims for negligence, conversion and money had and received are displaced by Ohio's codification of the UCC and must be dismissed.  Plaintiffs fraud claims, however, are specifically reserved as supplemental causes of action to the UCC claims pursuant to O.R.C. § 1301.03.

This leaves only the Fraud and Conspiracy to Commit Fraud Claims (Counts Two, Three, Four and Five), and the Aiding and Abetting Tortious Conduct claims (Count Eleven) against the Depositary Banks for the Court's consideration.  It appears from a review of the many filings in this case that there has not been a full and complete briefing as to the propriety of allowing these claims to continue forward.  Although it appears to the Court at this juncture that these are likely to be matters better suited for disposition at the summary judgment stage, Defendants shall have until **March 24, 2006** to submit their consolidated arguments for dismissal of these Counts if they so choose.  Plaintiffs will then have until **April 17, 2006** to respond.  The Court will not accept reply briefs on these issues without prior permission.

## CONCLUSION

For all of the reasons set forth above, Counts One, Six, Seven, Eight, Nine and Ten are hereby **DISMISSED** as against all Defendants.  The Drawee Banks are all, thereby, dismissed

from this action.  The only remaining claims and Defendants are as follow:  Counts Two and

Eleven remain against Defendant Fifth Third Bank; Counts Three and Eleven remain against

Defendant Unizan Bank; Counts Four and Eleven remain against Defendant Sun Trust Bank,

and; Counts Five and Eleven remain against Defendant Wachovia Bank.  The following motions

are disposed of as indicated:

\*      Defendants  Andover Bank, Farmers National Bank, First Central National Bank, Liberty
Savings Bank, Monroe County Bank, Republic Savings Bank, Sky Bank (For Itself And
As Successor In Interest To Americom Bank And Belmont National Bank), The
Covington Savings & Loan Association, The Huntington National Bank, The Killbuck
Savings Bank Co. And U.S. Bancorp **(ECF #168)**, and joined by , Hambuco Credit
Union, now known as AurGroup Financial Credit Union (via Notice of Joinder, ECF
#318) and First Indiana Bank (via Notice of Joinder, ECF #308) is **GRANTED**.

\*      Defendant United Fidelity Bank's Motion to Dismiss **(ECF #169)** is **GRANTED.**

\*      Defendant Old National Bank's Motion to Dismiss **(ECF #170)** is **GRANTED**.

\*      Motion of Defendant Wilson & Muir Bank & Trust Co. To Dismiss Plaintiffs' Complaint
for Lack of Personal Jurisdiction Or, In the Alternative, For Failure to State A Claim
Upon Which Relief Can Be Granted **(ECF #177)** is **GRANTED.**

\*      Dollar Bank's Motion to Dismiss **(ECF #179)** is **GRANTED**.

\*      Motion to Dismiss of Defendants Crane Federal Credit Union and Springs Valley Bank
& Trust Company **(ECF #189)** is **GRANTED .**

\*      Motion to Dismiss of Defendants, Crane Federal Credit Union and Spring Valley Bank &
Trust Co. **(ECF #190)** is **DENIED AS MOOT**.

\*      Defendant Ohio Valley National Bank of Henderson's Motion to Dismiss **(ECF #212)** is
**GRANTED**.

\*      Motion to Dismiss Of Defendant, Tuscarawas Schools Credit Union, Inc. **(ECF #228)** is
**GRANTED**.

\*      Motion to Dismiss, Or For Judgment On The Pleadings Of Defendants Park National
Bank, First-Knox National Bank, United Bank, N.A., Security National Gank, and
Richland Bank **(ECF #241)** is **GRANTED**.

\*      Plaintiffs Motion to Certify the Question of the Statute of Limitations For O.R.C. §
1303.16 & 1304.09 To The Ohio Supreme Court is **DENIED**. **(ECF #266)**.

\* Motion to Dismiss, Or For Judgment On The Pleadings of Defendant, Mechanics Savings Bank **(ECF #273)** is **GRANTED**.

\* Motion to Dismiss Plaintiff's Amended Class Action Complaint filed by Unizan Bank **(ECF # 299)** is **GRANTED** in part and **DENIED** in part.  Counts One, Eight, and Nine are dismissed based on the statutes of limitations.  Counts Six, Seven, and Ten are dismissed because they have been displaced by Ohio's codification of the UCC.  Counts Three and Eleven remain pending.

\* Motion to Dismiss Plaintiff's Amended Class Action Complaint of Defendants Charles Schwab & Co., Inc., CitiGroup, Inc., Dover-Phila Federal Credit Union, JP Morgan Chase Bank, N.A., Mid-Ohio Securities Corp., and PNC Bank, N.A. **(ECF #300)** is **GRANTED**.

\* Motion to Dismiss First Amended Class Action Complaint filed by Wachovia Bank, N.A., Suntrust Bank N.A. **(ECF # 307)** is **GRANTED** in part and **DENIED** in part.  Counts Eight and Nine are dismissed based on the statute of limitations.  Counts Six, Seven and Ten are dismissed because they have been displaced by Ohio's codification of the UCC.  Counts Four, Five, and Eleven remain pending.

\* Motion to Dismiss Amended Class Action Complaint filed by Fifth Third Bank **(ECF # 309)** is **GRANTED** in part and **DENIED** in part.  Counts One, Eight and Nine are dismissed based on the statutes of limitations.  Counts Six, Seven and Ten are dismissed because they have been displaced by Ohio's codification of the UCC. Counts Two and Eleven remain pending.

\* Motion to dismiss party filed by First Federal Community Bank **(ECF #312)** is **GRANTED**.

\* Motion of Defendant Third Federal Savings And Loan Association Of Cleveland To Dismiss Amended Class Action Complaint **(ECF #313)** is **GRANTED**.

\* Defendants Wright-Patt Credit Union and L.C.E. Federal Credit Union's Motion to Dismiss Plaintiffs' Second Amended Complaint **(ECF #343)** is **GRANTED**.

\* Defendant Key Bank, N.A.'s Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint Or, In the Alternative, To Compel Arbitration **(ECF #346)** is **GRANTED**. The claims against Key Bank are dismissed on statute of limitations grounds.

\* Defendants National City Bank, N.A. (In Its Own Capacity And As Successor To Provident Bank) And First Merit Bank, N.A.'s Motion To Dismiss Plaintiffs' Second Amended Class Action Complaint **(ECF #350)** is **GRANTED.**

\* Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Charter One **(ECF**

**#352)** is **GRANTED**.


\*       Terre Haute Savings Bank's Motion To Dismiss Second Amended Complaint **(ECF #354)** is **GRANTED**.


\*       Motion to Dismiss Intervenors' Complaint filed by National City Bank **(ECF #361)** is **GRANTED.**


\*       Motion to Dismiss Intervenors' Complaint filed by Hambuco Credit Union **(ECF #362)** is **GRANTED**.


\*       Defendant Matrix Capital Bank's Motion to Dismiss Plaintiffs' Second Amended Complaint **(ECF #373)** is **GRANTED.**

        **IT IS SO ORDERED.**


                                                        ___s/Donald C. Nugent_____
                                                        DONALD C. NUGENT
                                                        United States District Judge


DATED:  ___February 24, 2006___