**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| METZ, *et al.*, | ) | CASE NO:     5:05-cv-1510 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| UNIZAN BANK, *et al.,* | ) | NANCY A. VECCHIARELLI |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.  BACKGROUND

The only remaining defendants in this case are Unizan Bank, N.A. ("Unizan"), Wachovia Bank, N.A. ("Wachovia"), Sun Trust Bank ("Sun Trust"), and Fifth Third Bank, N.A. ("Fifth Third") (collectively, the "Depository Banks").  In an Amended Memorandum Opinion and Order ("Memorandum Opinion") issued February 28, 2006, the Court dismissed all defendants and claims except the following: Counts Two and Eleven against Unizan; Counts Three and Eleven against Fifth Third; Counts Four and Eleven against Sun Trust; and Counts Five and Eleven against Wachovia.

Counts Two, Three, Four, and Five assert, against each of the Depository Banks individually, claims for fraud and conspiracy to commit fraud and Count Eleven asserts a claim for aiding and abetting tortious conduct against all the Depository Banks.  (Doc. No. 377.)  At the conclusion of the Memorandum Opinion, Judge Nugent noted that there had not been "full and complete briefing on the propriety of allowing the remaining claims to go forward.  He

opined that the matter was "better suited for disposition at the summary judgment stage," but nonetheless invited the Depository Banks "to submit their consolidated arguments for dismissal of [the remaining] counts if they so choose." (*Id*. at 25.)

The parties have submitted their briefs and the motions are ready for consideration.  The following motions are before the Court: (1) a motion to dismiss filed by Fifth Third (Doc. No. 381); (2) a motion to dismiss filed jointly by Wachovia and Suntrust (Doc. No. 383); and (3) a motion to dismiss filed by Unizan (Doc. No. 384).  For the following reasons, the motions to dismiss filed by Fifth Third, Wachovia, and Suntrust (Doc. Nos. 381, 383) should be **GRANTED** and the motion to dismiss filed by Unizan should be **GRANTED** in part and **DENIED** in part as set forth at the conclusion of this Report and Recommendation.

## II.  STANDARD UNDER FED. R. CIV. P. 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  All well-pleaded allegations must be taken as true and construed most favorably toward the non-movant.  *Mayer v. Mylod,* 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).  Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

-2-

## III.  ANALYSIS

The Depository Banks assert that Plaintiffs fail to state claims for fraud, civil conspiracy, and aiding and abetting, and that the claims are barred under the statute of limitations and displaced by Ohio's codification of the Uniform Commercial Code ("UCC").  Each claim will be discussed in turn.

### A.  Statute of Limitations

#### 1.  Governing Statute

The Court must first determine the statute of limitations applicable to Plaintiffs claims. The Depository Banks argue that all of Plaintiffs' claims against them arise out of the illegal sales of securities in 1998 or 1999 and, therefore, are governed by Ohio Revised Code § 1707.43(B), the statute of limitations for Ohio securities fraud claims.[1]  Plaintiffs, on the other hand, contend that their claims are governed by the four-year limitation period for common-law fraud set forth in Ohio Rev.Code. § 2305.09 because their claims arise from James Carpenter's outright theft of their money through a "Ponzi" scheme.

Section 2305.09 provides that the limitation period for fraud is four years from the time the cause of action accrues, and that the cause of action accrues when "the fraud is discovered." Section 1707.43(B) provides that the limitation period for causes of action based on a sale of securities in violation of Ohio securities laws is two years after the plaintiff knew or should have

---

[1]In their initial briefs, the Depository Banks argued, *inter alia*, that Plaintiffs' claims are barred by the statute of limitation for common-law fraud set forth in Ohio Revised Code § 2305.09.  (Doc. Nos. 381, 383, 384.)  However, in a supplemental brief, they assert that Ohio Rev. Code § 1707.43(B) is the applicable statute of limitations, and that Plaintiffs' claims are time-barred under its provisions.

-3-

known of the facts giving rise to the claim or five years from the date of the sale, whichever is shorter.[2]

The Supreme Court of Ohio directs that when courts are faced with determining the statute of limitations that governs a given claim, they "must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded." *Lawyer's Coop. Pub. Co. v. Muething*, 603 N.E.2d 969, 973 (1992). Ohio courts generally hold that when a common-law fraud claim arises out of, or is predicated on, the sale of a security, the statute of limitation set forth in § 1707.43(B) applies. *Wyser-Pratte Mgmt Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 561 (6th Cir. 2005); *Wuliger v. Owens*, 365 F. Supp.2d 838, 851-852 (N.D. Ohio 2005) (discussing cases); *Goldberg v. Cohen*, Case No. 01 CA 49, 2002 Ohio App. LEXIS 3021, *6-14 (Ohio Ct. App. June 13, 2002) (discussing cases). In *Wyser-Pratte*, the Sixth Circuit held that "Ohio law is clear that because [the plaintiff's] fraud claims [arose] out of or [were] predicated on the sale of securities, they [were] governed by the specific statute of limitations set forth in Ohio Rev. Code § 1707.43(B); not the four-year general statute of limitations set forth in Ohio Rev. Code § 2305.09." *Wyser-Pratte*, 413 F.3d at 561. However, the Sixth Circuit has also

---

[2]Section 1707.43(B) provides as follows:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

stated: "We do not agree that the two-year limitation period in § 1707.43(B) was intended to apply to all cases of securities law fraud, including those based solely upon the common law of fraud . . . . It applies to cases where the plaintiff claims his recovery is 'based upon' or 'aris[es] out of' a violation of the blue sky provisions." *Nickels v. Koehler*, 541 F.2d 611, 616 (1976), *overruled on other grounds*, *Ockerman v. May Zima Co.*, 27 F.3d 1151 (6th Cir. 1994).  For a claim to arise out of a violation of the blue sky provisions, there must necessarily be a sale of a security.  *Martin v. Steubner*, 485 F. Supp. 88, 97 (S.D. Ohio 1979).

In support of their argument that § 1707.43(B) governs Plaintiffs' claims, the Depository Banks cite *Hayes v. Mid-Ohio Secs. Corp.*, No. 1:05-cv-01800, 2006 U.S. Dist. LEXIS 53706 (N.D. Ohio August 3, 2006), a case in which the court dismissed the plaintiffs claims under the statute of limitations set forth in § 1707.43(B).  Although the facts of *Hayes* are similar to the facts of the instant case in that Hayes purchased a promissory note through funds that were held in an account with Mid-Ohio Securities, Corp. ("Mid-Ohio") and asserted claims for conspiracy and aiding and abetting against Mid-Ohio, the case is readily distinguishable from the instant case.  The court's decision that § 1707.43(B) applied to Hayes' claims clearly rested on the nature of the allegations in the complaint.

The complaint in *Hayes* alleged "that Mid-Ohio violated Ohio Rev. Code § 1707.44 by selling a security that was not registered by coordination or qualification, was not the subject matter of a transaction that was registered by description, and was not exempt from the registration requirements of Ohio securities law."  *Hayes*, 2006 Ohio App. LEXIS 2006, at *1. The court noted that the complaint asserted common-law conspiracy, aiding and abetting, and fraud claims "for various activities alleged to be in violation of federal and state securities laws."

-5-

*Id.* at *5.  The court also found it significant that Hayes's "factual allegations as to the impropriety of Mid-Ohio's actions [were] all grouped under a description of 'Mid-Ohio's ongoing and continuing violation of Ohio's blue sky laws."  *Id.* at *6-7.  After reiterating that "[a]ll of the causes of action identified in Hayes' [sic] complaint [arose] out of a common allegation that there was an illegal sale of a security and/or an illegal investment in a security," the court stated:  "[g]iven the consistent nature of the allegations –all describing Mid-Ohio's alleged involvement in an illegal investment scam – the Court easily concludes that [§ 1707.43(B)] applies to all of Hayes' [sic] claims."  *Id.* at *5-7.

Unlike the complaint in *Hayes*, Plaintiffs' Amended Complaint contains no allegation that the Depository Banks violated Ohio securities law.  Although it alleges that James Carpenter has been convicted of securities violations, it consistently refers to the acts giving rise to Plaintiffs' claims as acts of theft, fraud, or conversion and as a "Ponzi" scheme.  (*See* Doc. No. 334-2  ¶¶ 1, 2, 3, 144, 317.)  For example, the first paragraph of the Amended Complaint states that the lawsuit "arises out of a Ponzi scheme" securities fraud in which the plaintiffs lost most or all of their retirement savings.  (Doc. No. 334-2 at 19.)  In paragraph three, Plaintiffs again describe the conduct giving rise to their claims as a "Ponzi" scheme.  (*Id.*)  Although the first paragraph alleges that "Plaintiffs purchased the fraudulent securities in 1998 or 1999," the remainder of the Amended Complaint makes clear that no "sale of a security" actually occurred. It consistently refers to the "Ponzi" scheme in which Carpenter and the Depository Banks conspired to "obtain possession of [Plaintiffs'] funds under false pretenses," and alleges that Plaintiffs' money never went to Lomas or Serengetti, but was instead deposited in and withdrawn from accounts opened by Carpenter.  (See, e.g., Doc. No. 334-2 ¶¶ 1-5, 238-44, 249-

55, 260-66.)  As the allegations in the *Hayes* complaint differ significantly from the allegations in the instant case, particularly with regard to the sale of a security, the rational in *Hayes* is not applicable in the instant case.

In support of their argument that their common law claims are governed by the statute of limitations for fraud set forth in § 2305.09, Plaintiffs cite *Ferritto v. Alejandro*, 743 N.E.2d 978 (Ohio Ct. App. 2000), a case in which the court held that the plaintiff's common-law claims were governed by § 2305.09 rather than § 1707.43(B).  In *Ferrito*, the plaintiffs placed numerous investments with the defendant investment advisor who subsequently "purchased investments for less than the amount of funds that the [plaintiffs] had given him to purchase the investments and pocketed the remaining funds."  *Id.* at 980.  The plaintiffs' claims included breach of contract, negligent hiring, negligent supervision, and fraud.  *Id.*  The plaintiffs sought "damages for the defendant's false statement that securities were purchased and upon which they relied," rather than "to recover the purchase price of the securities or damages for a violation of R.C. Chapter 1707."  *Id.* at 982.

The court concluded that § 1707.43(B) was inapplicable to the plaintiffs' claims because no violation of Chapter 1707 occurred.  It found that the only provision that arguably could have applied to the plaintiffs' claims was § 1707.44(B), which prohibits "knowingly making or causing to be made any false representation concerning a material relevant fact[] in any oral statement [for the purpose of] selling any securities in this state." [3]  *Id.* at 982.  As the relevant

---

[3]The Depository Banks fail to identify a provision that applies to Plaintiffs' claims.  It appears that § 1707.44(B) is the only provision of Chapter 1707 that could arguably apply to the claims in this case.

facts alleged in the instant case are similar to those alleged in *Ferrito* – in that they allege that Carpenter did not actually sell securities to Plaintiffs, but rather stole their money by falsely representing that Plaintiffs were purchasing the Lomas and Serengetti promissory notes– the Court's analysis is instructive:

> Alejandro's statements were not made with the purpose of selling securities as misstating corporate assets or profits may be.  Rather, Mr. Alejandro's statements were, allegedly, made with the intent to induce the Ferrittos to deposit funds with Mr. Alejandro so that he could pocket their investment money, or at least a substantial portion of it.  Moreover, the Ferrittos do not claim injury herein due to the securities which Mr. Alejandro actually purchased for them but only claim injury in regard to those securities which he stated that he had sold to them but did not actually purchase on their behalf.  Furthermore, the Ferrittos do not aver that Mr. Alejandro made false representations about the securities themselves.  Hence, we conclude that the Ferrittos' cause of action lacks redress under the blue sky provisions of R.C. Chapter 1707 because the Ferrittos do not aver that Mr. Alejandro ever intended to sell them the securities which are the subject of this appeal, rather, *his purpose was not to sell them securities but to gain control over their money.*  Accordingly, we find the statute of limitations in R.C. 1707.43 inapplicable to the case at bar.

Id. at 982-83 (emphasis added).

As in *Ferritto*, the Amended Complaint in the instant case contains no allegation that Plaintiffs' claims arise from an actual sale of securities.  Moreover, Plaintiffs do not allege that Carpenter or the Depository Banks made false statements for the purpose of selling securities; rather, they allege that the statements were made "to obtain possession of Plaintiffs' funds." (Doc. No. 334-2 ¶¶ 238, 249, 260.)  Like the plaintiffs in *Ferrito*, Plaintiffs allege injury from the securities Carpenter purported to sell them, but did not actually sell.  Further, Plaintiffs do not allege that Carpenter made false representations about the securities themselves.  Thus, as there was no sale of a security, and as Carpenter's purpose was not to sell Plaintiffs securities, but to fraudulently obtain possession of Plaintiffs' money through a "Ponzi" scheme, the statute

-8-

of limitations set forth in § 1707.44(B) is inapplicable.  Accordingly, Plaintiffs' claims are governed by the statute of limitations for fraud set forth in § 2305.09.

### 2.  Application of § 2305.09

Under § 2305.09, Ohio's four-year limitation period for fraud claims is triggered when the fraud is discovered.  § 2305.09.  Application of the discovery rule involves a two-prong test: the statute of limitation is not triggered until the plaintiff discovers both (1) the injury and (2) that "the injury was caused by the conduct of the defendant." *Id.* (citing *O'Stricker v. Jim Walter Corp.,* 447 N.E.2d 727, paragraph two of the syllabus (Ohio 1983)).  Further, the discovery of the wrongdoing may be actual or constructive.  *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1300-1301 (Ohio 1984).  "[A] cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Norgard v. Brush Wellman*, 766 N.E.2d 977, 979 (Ohio 2002) (internal citations omitted).

The initial complaint in this case was filed May 24, 2005.  Therefore, Plaintiffs' claims should be dismissed only if the Court can determine, as a matter of law, that Plaintiffs discovered or should have discovered that their injuries were caused by the alleged conduct of the Depository Banks before May 24, 2001.  This Court cannot make that determination on the pleadings.

The Depository Banks argue that Plaintiffs had constructive notice as early as 1999, but no later than 2000.  (*See* Doc. No. 381 at 21.)  They argue that Plaintiffs should have known of "possible wrongdoing and injury" as early as 1999 for the following reasons: (1) the Securities Division of the Ohio Department of Commerce issued cease and desist orders to Carpenter in

1999; (2) the promissory notes were in default in 1999; and (3) Plaintiffs allege that they were injured when their checks were improperly paid in 1999. (*Id*.) The Depository Banks further assert that, at the latest, Plaintiffs were put on notice by 2000 when their investments failed and when, in June 2000, a member of the Metz class[4] filed a complaint against the guarantor of the notes "for injuries arising out of Carpenter's Ponzi scheme." (*Id*.)

The problem with the Depository Banks' arguments is that they assume that once Plaintiffs had notice of their injuries and Carpenter's wrongdoing, they also had notice of the Depository Banks' alleged conduct. The Court cannot make this assumption, as it is not clear from the pleadings that Plaintiffs should have discovered the alleged conduct of the Depository Banks by the time their investments failed or when the action was filed against the guarantor of the notes in 2000. None of the Plaintiffs allege when they discovered the alleged fraud. In fact, only the Intervenors, Richard and Jo Ann Floyd, actually specify a time that Plaintiffs discovered the conduct of one of the Depository Banks. Their brief in response to the motions to dismiss asserts that "[t]he first date Plaintiffs could have known of the fraud of Unizan is when Unizan sent counsel for the Plaintiffs its bank records on May 27, 2002." (Doc. No. 392 at 8.) Based on the pleadings and limited briefing, there is insufficient information from which the Court could

---

[4]The Amended Complaint defines the Metz Class, one of numerous sub-classes, as follows:

> All individuals who, during the period between and including 1998 and 1999 purchased promissory notes in either Serengeti Diamonds U.S.A., Inc. ("Serengeti") and/or Lomas De La Barra Development Corporation, Inc. ("Lomas") and who were then injured when their checks were improperly paid into Defendant Fifth Third's depository bank account numbered 753-40923.

(Pl.'s Am. Compl. ¶ 120(a).)

conclude that Plaintiffs knew, or through the exercise of reasonable diligence, should have known of the alleged conduct of the Depository Banks in relation to their injuries.  Accordingly, dismissal of Plaintiffs' claims based on the statute of limitations is not appropriate under Rule 12(b)(6).

## B.  Displacement of Fraud Claims by UCC

In his Memorandum Opinion, Judge Nugent previously addressed the issue of whether Plaintiffs' claims are displaced by the UCC.  After finding that Plaintiffs claims for negligence, conversion, and money had and received were displaced by Ohio Rev. Code § 1301.03, Judge Nugent concluded that "Plaintiffs' fraud claims . . . are specifically reserved as supplemental causes of action to the UCC claims."  (Doc. No. 377 at 24.)  Accordingly, the Depository Banks' argument that the fraud claims are displaced by the UCC has no merit.

## C.  Failure to State Claims for Fraud

Next, the Depository Banks argue that Plaintiffs fail to state claims for fraud.  The Court agrees.  The following elements are necessary to support a fraud claim under Ohio law:  (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying on it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984).  Plaintiffs fail to adequately allege the first and fifth elements of fraud, that representations were made to Plaintiffs and that Plaintiffs

-11-

relied on the representations.[5]

Under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), when a party alleges fraud, the circumstances constituting fraud must be stated with particularity.  Fed. R. Civ. P. 9(b).  At a minimum, the party must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  *Michaels Bldg. Co. v. Ameritrust Co. N.A.,* 848 F.2d 674, 679 (6th Cir.1988).  The threshold test is whether the complaint places the defendant on "sufficient notice of the misrepresentation," to answer in an informed manner.  *Brewer v. Monsanto Corp.,* 644 F.Supp. 1267, 1273 (M.D.Tenn.1986).

According to the Amended Complaint,  representations were made to Plaintiffs by employees of the Depository Banks that Plaintiffs' "money was going to Lomas and/or Serengeti."  (Doc. No. 334-2 ¶¶  226, 239, 250, 261.)  Plaintiffs allege that the representations "originated at the branches where the accounts were opened and were direct to plaintiffs' residences" and "occurred when the accounts were opened and later when the checks were paid." (Doc. No. 334-2 ¶¶ 227-28, 241-42, 251-52, 262-63.)  In their brief in opposition, Plaintiffs further assert that the representations occurred when the Depository Banks "stamped the back of plaintiffs' checks indicating that the money had gone to Lomas and Serengeti."  (Doc. No. 387 at 6.)

The allegations in the Amended Complaint that  representations were made to Plaintiffs

---

[5]Although the sufficiency of the pleadings with regard to the elements of knowledge, intent, and injury is also questionable, the Court addresses only the arguments made by the Depository Bank to which Plaintiffs have had an opportunity to respond.

on which Plaintiff justifiably relied are nothing more than conclusory assertions. As to the allegation that representations were made to Plaintiffs "when the accounts were opened," it is not at all clear how or why the opening of Carpenter's accounts constituted representations to Plaintiffs that their money was going to Lomas and Serengeti or that Lomas and Serengeti owned those accounts. Plaintiffs plead no facts even suggesting that representations were made to Plaintiffs when Carpenter opened the accounts. To the extent that Plaintiffs argue that simply by opening and maintaining an account for a customer, a bank makes a representation to the world at large that the account-holder is who he or she purports to be, that argument is rejected as a matter of law.

When a representation is made, there necessarily must be someone to whom it is made, that is, someone must actually receive or perceive the representation. Plaintiffs allege that the representations were made when the accounts were opened, yet they fail to allege that they were actually aware of the opening of the accounts at that time. Plaintiffs plead no facts even raising an inference that they were aware of the opening of the accounts and that they actually received a representation from the Depository Banks at that time. Absent Plaintiffs' knowledge of the opening of the accounts, it defies logic to suggest that representations were made to Plaintiffs when the accounts were opened.

Plaintiffs similarly fail to allege any facts supporting the conclusory assertion that the Depository Banks made representations that Plaintiffs' money was, in fact, going to Lomas and Serengeti when Plaintiffs' checks were paid. The Amended Complaint fails to indicate in what manner or by what means the Depository Banks made, and Plaintiffs received, a representation from the Depository Banks that the checks were paid to Lomas and Serengeti. Although

-13-

Plaintiffs vaguely allege that the "representations originated at the branches where the accounts were opened and were direct to plaintiffs' residences," this is insufficient to satisfy the particularity requirement of Rule 9(b).  Plaintiffs seem to suggest that some document containing the alleged representations was sent to Plaintiffs' residences, but do not indicate what that document was, who sent it, or that Plaintiffs actually received and read it.  Plaintiffs are not alleging that an individual at the Depository Banks made a specific statement that the money was going to Lomas and Serengeti; rather, they appear to be drawing an inference or conclusion that a representation was made from *the act* of "Plaintiff's checks [being] paid."  (*See* Amend. Compl.¶ 228.)

To the extent Plaintiffs argue that the stamps on the backs of the paid checks constitute representations that Plaintiffs' money, in fact, went to Lomas and Serengeti, or that the persons who opened the accounts were, in fact, the persons whom they purported to be, their theory is unavailing.  Plaintiffs fail to indicate what was actually stamped on the back of the checks that could reasonably be interpreted as a representation.  Moreover, the Court has viewed the copies of the several checks attached to the Depository Banks joint reply brief, and they contain nothing that reasonably could be interpreted as making the representations alleged by Plaintiffs.[6]  (Doc. No. 395, Ex. A.)  The checks are either stamped with a series of numbers or with nothing at all. *Id.*  They cannot reasonably be interpreted as a representation to Plaintiffs that their money went to Lomas and Serengeti.  To the extent that some checks may bear different stamps, Plaintiffs

---

[6]Although documents not attached to the complaint should normally not be considered in reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider such documents when, as here, they are referenced in the complaint and central to the claims. *Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

fail to specify what the stamps actually indicate.

Plaintiffs suggest that the Court should not dismiss their claim for failure to satisfy the particularity requirement of Rule 9(b), but should "state which aspects of the Amended Complaint should be changed and then provide plaintiffs with an opportunity to amend the same." (Doc. No. 387 at 5.) First, it is not the Court's role to draft Plaintiffs' pleadings, and the Court will not do so. Allowing Plaintiffs to amend their complaint is not justified under the circumstances, as Plaintiffs have already amended their complaint twice. The first time Plaintiffs filed for leave to amend, they sought leave to amend in order to, among other things, satisfy the particularity requirement for fraud. (*See* Doc. No. 262 at 1.) Second, based on Plaintiffs' response brief, it appears that the vagueness of Plaintiffs' pleadings regarding the representation element stems from a lack of facts in support of that element, rather than a lack of skill in the art of pleading. Plaintiffs have failed to allege any facts from which it could be inferred that the Depository Banks actually communicated with Plaintiffs in any way. If Plaintiffs had facts or arguments to support the allegation that the Depository Banks made representations to Plaintiffs when Plaintiffs' checks were paid, they could and should have stated so in their response brief. They have not done so; and their claims, as plead, are insufficient and/or fail to plead a fraudulent misrepresentation as a matter of law.

As the Amended Complaint fails to sufficiently state the representation element of fraud, the fraud claims fail as a matter of law on this ground alone. However, even assuming the representation element is satisfied, Plaintiffs also fail to allege facts demonstrating reliance. In support of the reliance element, the Amended Complaint states only that Plaintiffs "justifiably relied on the representation that money was going to [Lomas or Serengeti] to their detriment."

-15-

(Doc. No. 334-2 ¶¶ 229, 240, 253, 264.) This statement is not a factual allegation; it is a legal conclusion that the Court "need not accept as true." *Morgan,* 829 F.2d at 12.

Plaintiffs have plead no facts demonstrating that they actually relied on the alleged representations that their money was going to Lomas or Serengeti or that they did something, or failed to do something, to their detriment because of such reliance. As to representations that allegedly occurred when the checks were paid, the Amended Complaint fails to allege how Plaintiffs relied on representations allegedly made *after* Plaintiffs had already given their checks to Carpenter. As to the representations that allegedly occurred when the accounts were opened, Plaintiffs similarly fail to allege any facts demonstrating detrimental reliance.

Because Plaintiffs fail to sufficiently allege the representation and reliance elements of fraud, they fail to state claims for fraud. Accordingly, the Magistrate Judge recommends that the fraud claims in Counts Two, Three, Four and Five be dismissed.

### D. Failure to State Claims for Conspiracy Against Fifth Third, Wachovia, and SunTrust

Ohio law defines civil conspiracy as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (1995) (internal quotation and citation omitted). To succeed on a claim of civil conspiracy, Plaintiffs must prove the following elements: "(1) a malicious combination; (2) two or more persons; (3) injury to persons or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Aetna Cas. and Sur. Co. v. Leahey Const. Co.,* 219 F.3d 519, 534 (6th Cir. 2000) (quoting *Universal Coach, Inc. v. New York City Trans. Auth. Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993). The Depository Banks contend that Plaintiffs have failed to sufficiently plead the

-16-

first and fourth elements of conspiracy.

As to the fourth element, the "existence of an unlawful act independent from the actual conspiracy," the Depository Banks maintain that the independent act on which Plaintiffs conspiracy claims are based is the alleged fraud of the Depository Banks, and that because Plaintiffs fail to state claims for fraud, there is no unlawful act independent from the actual conspiracy.  The Court disagrees.  While it could be stated more clearly and directly, the Amended Complaint alleges that Carpenter's fraud, not the alleged fraud of the Depository Banks, serves as the underlying unlawful act.  In Counts Two through Five, as to each Depository Bank, the Amended Complaint alleges that an employee of the bank opened the accounts "*in furtherance of James Carpenter's fraud.*"  (Amend. Compl. ¶¶ 223, 244, 255, 266.) Plaintiffs have sufficiently plead the existence of an unlawful act independent from the actual conspiracy.

Despite the sufficiency of the pleadings as to the fourth element, Plaintiffs conspiracy claims against Fifth Third, Wachovia, and Sun Trust should, nonetheless, be dismissed because the Amended Complaint fails to allege the first element of conspiracy, "a malicious combination."[7]  This element requires the existence of an agreement, and is satisfied by showing that "the alleged conspirator shared in the conspiratorial objective."  *Aetna*, 219 F.3d at 538. Although the agreement need not be express, a plaintiff must demonstrate "a common understanding or design, even if tacit, to commit an unlawful act."  *Id.* (quoting *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996)).  The degree of involvement of the secondary party

---

[7]  The conspiracy claim against Unizan is discussed separately below.

-17-

required for civil conspiracy is higher than that required for aiding and abetting, which, as discussed below, requires only knowledge of the principal's wrongdoing.  *Id.*

Although the agreement, in conspiracy cases, is often proved through circumstantial evidence, in the instant case, the allegations in the Amended Complaint fail to raise even an inference that the Depository Banks "shared in the conspiratorial objective."  Even assuming the Depository Banks knew that Carpenter was engaged in some type of wrongful conduct, such knowledge does not suggest that the Depository Banks actually shared in Carpenter's objective to defraud Plaintiffs.  Because the Amended Complaint fails to allege the agreement element of civil conspiracy, Plaintiffs fail to state claims for conspiracy against Fifth Third, Wachovia, and SunTrust.[8]  Accordingly, the civil conspiracy claims in Counts Three, Four, and Five should be dismissed.

**E. Failure to State Claim for Conspiracy Against Unizan**

The conspiracy allegations against Unizan are unique as compared to the allegations against the other Depository Banks.  Therefore, the claim is analyzed separately.  Unlike the claims against the other Depository Bank, Count Two of the Amended Complaint sufficiently states a conspiracy claim against Unizan.

As discussed in the preceding section, as to each Depository Bank, the Amended

---

[8]Counsel is reminded of his obligations under Fed. R. Civ. P. 11 ("Rule 11").  Rule 11 provides that when an attorney presents a pleading to the court, among other things, the attorney is certifying that, to the best of his or her knowledge, the claims presented "are warranted by existing law or the nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law," and that "allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support . . . ."  Fed. R. Civ. P. 11(b)(2)-(3).

Complaint alleges that an employee of the bank opened the accounts "in furtherance of James Carpenter's fraud."  This allegation is set forth against Unizan in paragraph 223 of the Amended Complaint.  (Amend. Compl. ¶ 223.)  Although this allegation alone sufficiently establishes that Carpenter's fraud is the underlying fraud on which the conspiracy claim is based, as to Unizan, additional paragraphs further make this clear.  Paragraph 216 alleges that "Ashley Carpenter maliciously conspired with her father . . . and committed overt acts aimed at furthering *his* fraud."  (*Id.* ¶ 216.)  Similarly, paragraph 235 alleges that "Unizan's *participation in James Carpenter's fraud* and/or its own failure to disclose were the proximate cause of [certain class members' losses]."  (*Id.* ¶ 235.)  Thus, Plaintiffs allege that Carpenter's fraud, not the fraud of the Depository Banks, serves as the underlying fraud for the conspiracy claim against Unizan.  Accordingly, the fourth element is sufficiently plead.

Unlike the counts against the other Depository Banks, Count Two sufficiently alleges the first element of conspiracy, an agreement or "malicious combination."  In Count Two, Plaintiffs allege that Carpenter's daughter, Ashley Carpenter, was the Unizan employee who opened the accounts for Carpenter at Unizan, and that she conspired with Carpenter to commit fraud against Plaintiffs in the scope of her employment for Unizan.  They further allege that Unizan is liable for Ashley Carpenter's actions under the theory of *respondeat superior*.  Count Two sets forth the following additional allegations not set forth in the conspiracy counts against the other Depository Banks:

> 216.   Ashley Carpenter maliciously conspired with her father to defraud the Bredhold and Triggs Class members and committed overt acts aimed at further his fraud.

> 217.   As an employee of First National/Unizan, Ashley Carpenter personally opened accounts numbered 30179955 and 3017994, controlled solely

-19-

by Carpenter, including Serengeti and Lomas.

\* \* \*

220.   Ashley Carpenter knew or should have known that her father was not authorized to act on behalf of Serengeti or Lomas.

221.   Ashley Carpenter knew or should have known that her father had previously been convicted of bank fraud, aggravated theft, and was disbarred from the practice of law for stealing from his clients [sic].

(Amend. Compl. ¶¶ 216-17, 220-21.)  Viewing the claim in the light most favorable to Plaintiffs, these additional factual allegations – that Ashley Carpenter is James Carpenter's daughter, that she knew of her father's convictions for bank fraud and theft and his disbarment for stealing from his clients, and that she was the Unizan employee who opened two accounts for him in the name of Lomas and Serengeti– raise some basis for an inference that Ashley Carpenter "shared in the conspiratorial objective" of James Carpenter, and that therefore, there was an agreement between them.  Therefore, unlike the conspiracy claims against the other Depository Banks, the conspiracy claim asserted against Unizan in Count Two should not be dismissed.

Unizan asserts two arguments for dismissal of the conspiracy claim, both of which lack merit.  First, Unizan argues that "if Ashley Carpenter did anything, she conspired with her father to steal from Serengeti and Lomas because the checks [Plaintiffs] gave to Carpenter were as a matter of law, the property of the payees, Serengeti and Lomas."  (Doc. No. 384 at 6.)  To whom the checks belonged under the UCC is not relevant.  The Amended Complaint alleges that James Carpenter defrauded Plaintiffs, and that his daughter, Ashley Carpenter conspired with him to defraud Plaintiffs.

Unizan's second argument, that it cannot be liable for Ashley Carpenter's conduct because it was "not calculated to facilitate or promote Unizan's business," is equally unavailing. (Doc. No. 384 at 7.)  Unizan cites Ohio law stating that "an employer is not liable for

-20-

independent and self-serving actions of his employees which in no way facilitate or promote his business" and attempts to compare this case to *Byrd v. Faber*, 565 N.E.2d 584 (Ohio 1991), a case in which the Supreme Court of Ohio held that a church was not liable for a pastor's sexual misconduct because the conduct did nothing to promote or facilitate the business of the church, and the church did not hire the pastor to sexually assault members of the congregation. Unizan's analogy is entirely unconvincing, as the facts in this case are quite different. Banks hire tellers to, among other things, open accounts. Opening accounts is exactly what Ashley Carpenter is alleged to have done to further the conspiracy. Further, the act of opening the accounts facilitated and promoted Unizan's business, as it is part of a bank's business to open customer accounts. Thus, Unizan's contention that Ashley Carpenter's conduct was not calculated to facilitate or promote Unizan's business is unconvincing.

As Plaintiffs have sufficiently plead the elements of conspiracy against Unizan, dismissal of the conspiracy claim asserted in Count Two is not warranted.

**F.  Failure to State Claims for Aiding and Abetting**

The Court rejects the argument that Ohio law does not recognize aiding and abetting liability. The Depository Banks cite a Sixth Circuit case in which the court stated "it is unclear whether Ohio recognizes a common law cause of action for aiding and abetting." *Pavolich v. National City Bank No.*, 04-4372, 2006 U.S. App. LEXIS 2417, * 25 (6th Cir. 2006). However, in *Pavolich,* the court never decided the question, as it found that even if Ohio law recognized such a claim, the plaintiff could not establish the requisite elements. Moreover, the Sixth Circuit has previously determined that "the Supreme Court of Ohio would recognize aiding and abetting liability if squarely faced with the issue." *Aetna,* 219 F.3d at 533-34. In *Aetna*, the Sixth Circuit

-21-

reversed the district court's denial of the plaintiff's motion for judgment as a matter of law on an aiding and abetting claim.  As the Court is bound by Sixth Circuit precedent, the Court should not dismiss the aiding and abetting claims on the ground that Ohio law does not recognize aiding and abetting liability.

The Court must now address the issue of whether Plaintiffs sufficiently plead aiding and abetting.  "The modern application of civil aiding and abetting can be traced to the Second Restatement of Torts: 'For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . .'"  *Id.* 533 (quoting Restatement Second of Torts § 876(b) (1979)).  Thus, aiding and abetting liability requires two elements:  (1) knowledge that the primary party's conduct is a breach of duty and (2) substantial assistance or encouragement to the primary party in carrying out the tortious act. *Id*. at 533.  The Depository Banks contend that Plaintiffs fail to sufficiently allege both of these elements.

Because the facts plead against Unizan are different from those plead against the other banks, as to each element of aiding and abetting, the Court will analyze the claims against Fifth Third, Wachovia, and SunTrust together before separately analyzing the claim against Unizan.

### 1. Knowledge

First, the knowledge required for aiding and abetting liability is actual knowledge; constructive knowledge does not suffice.  *Id.* at 536  ("We stress that the requirement is *actual* knowledge.").  Plaintiffs inaccurately cite *Aetna* for the proposition that actual knowledge is not required, and contend that an aider and abettor's general awareness of its role in the tortious

conduct of the principal suffices to establish liability.  (Doc. No. 387 at 11.)  Expressly rejecting

that proposition, the court in *Aetna* concluded:  "We see no conflict between the position that an

aider and abettor must have actual knowledge of the primary party's wrongdoing and the

statement that it is enough for an aider and abettor to have a general awareness of its role in the

other's tortious conduct."  *Id.* at 534.  The court pointed out that if a party is aware of its role in

another's tortious conduct, "then surely he knows that the primary party's conduct is tortious."

*Id.*  *Aetna* clearly holds that actual knowledge is required to support an aiding and abetting

claim.

> a.  *Fifth Third, Wachovia, and SunTrust*

The Amended Complaint alleges that all of the Depository Banks "had knowledge that

Carpenter's conduct constituted a breach of duties owed to plaintiffs."  (Doc. No. 334-2 ¶ 315.)

In addition, it alleges that the Depository Banks recklessly opened accounts for Carpenter

without corporate authorization statements and with facially invalid signature cards lacking a

phone number, birth date, and/or signature attesting to the veracity of the information.  (Doc. No.

334-2 ¶¶ 146-57, 165-72, 175-81, 184-99, 247, 248, 259.)

The Depository Banks cite two California cases for the proposition that allegations of

atypical banking procedures, and a bank's failure to follow its internal policies, are insufficient

to constitute knowledge.  However, this is not the law in Ohio.  The Sixth Circuit has stated that

the requisite knowledge for aiding and abetting liability may be, and often is, demonstrated by

circumstantial evidence and that the details of a particular transaction may be sufficient to allow

an inference of knowledge on the part of a bank.  *Aetna*, 219, F.3d at 535.  In *Aetna*, the Sixth

Circuit quoted, with approval, the following statements of two other circuit courts.  "A party who

engages in atypical banking transactions . . . may be found liable as an aider and abettor with a minimal showing of knowledge." *Id*. at 536 (quoting *Camp v. Dema*, 948 F.2d 455, 499 (8th Cir. 1991)).  "If the method or transaction is atypical . . . it may be possible to infer the knowledge necessary for aiding and abetting liability."  *Id*. (quoting *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir. 1975)).  As Plaintiffs allege that the Depository Banks recklessly opened Carpenter's accounts without standard requirements such as corporate authorization statements and valid signature cards, they sufficiently allege the knowledge element of their aiding and abetting claims against Fifth Third, Wachovia, and SunTrust.

    *b. Unizan*

In addition to the facts above, as to Unizan, the Amended Complaint alleges that Carpenter's daughter opened the accounts for him.  Coupled with the atypical procedures used to open the accounts, this alleged fact raises an even greater inference that Ashley Carpenter had actual knowledge of her father's scheme.  Because she was acting within the scope of her employment when she opened the accounts, her knowledge may be imputed to Unizan. Accordingly, Plaintiffs have sufficiently plead knowledge as to Unizan.

**2. Substantial Assistance**

To prove substantial assistance, Plaintiffs must show that "the secondary party proximately caused the violation, or, in other words, that the encouragement or assistance was a substantial factor in causing the tort."  *Aetna* at 537 (quoting *K&S Partnership v. Continental Bank, N.A.*, 952 F2d 971, 979 (8th Cir. 1991)); *see also Restatement (Second) of Torts* §876(b), comment d.  Under the common-law, the following factors are relevant in determining whether the assistance was substantial enough to warrant liability: (1) the nature of the act encouraged;

(2) the amount of assistance given by the defendant; (3) his presence or absence at the time of the tort; (4) his relation to the other; and (5) his state of mind.  *Restatement (Second) of Torts* §876(b), comment d;  *see also Landy v. Federal Deposit Ins. Corp.*, 486 F.2d 139, 163-164 (3d Cir. 1973).

     *a.  Fifth Third, Wachovia, and SunTrust*

     As to these Depository Banks, consideration of the relevant factors makes clear that the allegations in the Amended Complaint are insufficient to demonstrate substantial assistance. The tortious act allegedly encouraged by the Depository Banks was fraud, a harmful and deceitful act in the abstract, but particularly harmful in this case in light of the number of persons injured and the extent of the injuries.  While the first factor appears to weigh in favor of liability, the other factors overwhelmingly militate against liability.

     The Amended Complaint alleges that the Depository Banks opened accounts for Carpenter and processed Plaintiffs' checks; no other assistance is alleged.  Other courts have found that the claim that a principal tortfeasor uses bank accounts to perpetrate a fraud is insufficient to support an allegation of substantial assistance required for aiding and abetting liability.  *See Williams v. Nank Leumi Trust Co.*, 96 Civ. 6695, 1997 U.S. Dist. LEXIS 7538, *14 (S.D.N.Y. May 30, 1997) (finding no substantial assistance where principal opened several accounts at depository bank and used accounts to make several transfers to accomplish the fraud).  The relationships alleged between Carpenter and the Depository Banks are common-place business relationships between a bank and its customer.  The Amended Complaint does not allege that any agent or representative of the Depository Banks was present or assisted Carpenter at the time Carpenter defrauded Plaintiffs.  Perhaps most significantly, the Amended Complaint

does not allege that the Depository Banks or their agents acted with culpable mental states. There is no allegation that the Depository Banks intended to harm Plaintiffs, intended to profit from Carpenter's tortious conduct, or, assuming that they knew of Carpenter's scheme, wanted Carpenter to succeed. There is no allegation from which it can be inferred that their conduct in opening accounts and processing checks was motivated by anything other than typical and legitimate business interests.

In light of the above factors, the allegations in the Amended Complaint are insufficient to establish that Fifth Third, Wachovia, and SunTrust provided substantial assistance to Carpenter. Accordingly, the aiding and abetting claim asserted against Fifth Third, Wachovia, and SunTrust in Count Eleven should be dismissed.

### b. Unizan

The Amended Complaint makes a number of additional allegations regarding Unizan's alleged assistance. For the following reasons, these allegations are sufficient to state a claim for aiding and abetting against Unizan.

Unizan is in a similar position with the other Depository Banks with regard to the first, second, and third factors. As discussed above, the first factor, the nature of the act, weighs in favor of aiding and abetting liability and the second and third factors, the amount of assistance given and the alleged aider and abettor's presence at the time of the tort, weigh against liability. However, in contrast to the analysis of the claims against the other banks, the facts alleged relevant to the fourth and fifth factors weigh in favor of liability.

As to the fourth factor, relation to the principal, the relationship alleged was more than an ordinary bank-customer relationship, as James Carpenter and Ashley Carpenter, whose actions

may be imputed to Unizan, were father and daughter.  The family relationship weighs in favor of liability.  For the same reason, the fifth factor, the state of mind of the alleged aider and abetter, weighs in favor of liability.  It may reasonably be inferred that, as James Carpenter's daughter, Ashley Carpenter was familiar with the scheme, had an interest in the scheme's success, wanted the scheme to succeed, and that she was, therefore, acting with a more culpable state of mind than the employees of the other banks.  Viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs sufficiently allege the element of substantial assistance as to Unizan. Accordingly, Plaintiffs sufficiently state a claim for aiding and abetting against Unizan.

In summary, Count Eleven should be dismissed as to the aiding and abetting claims asserted against Fifth Third, Wachovia, and SunTrust, but should not be dismissed as to the aiding and abetting claim asserted against Unizan.

### IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends the following:

1. Fifth Third's motion to dismiss (Doc. No. 381) should be **GRANTED** as to the fraud and conspiracy claims in Count Three and the aiding and abetting claim in Count Eleven;

2. Wachovia and SunTrust's motion to dismiss (Doc. No. 383) should be **GRANTED** as to the fraud and conspiracy claims against SunTrust in Count Four and Wachovia in Count Five and the aiding and abetting claim against SunTrust and Wachovia in Count Eleven; and

3. Unizan's motion to dismiss (Doc. No. 384) should be **GRANTED** as to the fraud claim in Count Two, but **DENIED** as to the conspiracy claim in Count Two and the aiding and abetting claim in Count Eleven.

An order consistent with the above recommendations would result in a dismissal of all

claims except the conspiracy claim asserted against Unizan in Count Two and the aiding and abetting claim asserted against Unizan in Count Eleven.

                                        */s/ Nancy A. Vecchiarelli*
                                        United States Magistrate Judge

Date: February 8, 2008


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**