**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CAROL METZ, et al., | ) | CASE NO:   05:05-cv-1510 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| UNIZAN BANK, et al., | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

This case has been referred to the undersigned Magistrate Judge for general pretrial supervision. Between December 30, 2007 and January 16, 2008, 104 motions to intervene were filed in this putative class action. (Doc. Nos. 414-52, 454-80, 482-506, 508-15, 517-21.) For the reasons set forth below, the motions to intervene (Doc. Nos. 414-52, 454-80, 482-506, 508-15, 517-21) should be **DENIED**.

### I.  BACKGROUND

Plaintiffs filed a Class Action Complaint on May 27, 2005. (Doc. No. 1.) Plaintiffs obtained leave to file an Amended Complaint on August 26, 2005 (Doc. No. 275) and a Second Amended Complaint on November 3, 2005 (Doc. No. 335). The Second Amended Complaint raised eleven claims under the Uniform Commercial Code and Ohio common law.

On October 26, 2005, a motion to intervene was filed by attorney Daniel G. Morris on behalf of Richard and JoAnn Floyd ("the Floyds") and Billy and Marlene Blair ("the Blairs"). (Doc. No. 332.) On November 4, 2005, the Court issued a marginal order granting, in part, the motion to intervene. (Doc. No. 336.) On March 3, 2006, the Court issued a clarification of the

marginal order ("Clarification Order"). (Doc. No. 379.) According to the Clarification Order, the Court permitted the Floyds to intervene as members of the Lomas and Serengetti class; however, the Court denied the motion as to the Floyds' claims arising out of their investment in promissory notes in International Real Estate Investment Group, LTD ("International"), another entity used in James Carpenter's Ponzi schemes. (*Id*. at 2-3.) The Court denied the Blairs' request to intervene because their claims were not at all based on investments in Lomas or Serengetti notes, but were based solely on their investment in shares of Rawhide Select, Inc. ("Rawhide"), another entity used in Carpenter's Ponzi schemes. (*Id*. at 3.) The Court made clear that it would permit intervention only by members of the Lomas and Serengetti class because the class action complaint related only to purchases of Lomas and Serengetti notes. The Court expressly denied intervention based on claims related to purchases of International or Rawhide notes, as doing so would change the nature of the purported class action. (*Id*. at 2-3.)

After numerous motions to dismiss were filed, on February 28, 2006, the Court issued an Amended Memorandum Opinion and Order ("Memorandum Opinion") dismissing all claims except the following: Counts Two, Three, Four, and Five, which asserted claims for fraud and conspiracy to commit fraud against each of the Depository Banks[1] individually, and Count Eleven, which asserted a claim for aiding and abetting tortious conduct against all the Depository Banks. (Doc. No. 377.) At the conclusion of the Memorandum Opinion, Judge Nugent noted that there had not been full and complete briefing on the propriety of allowing the remaining

---

[1] The Depository Banks are Unizan Bank, N.A. ("Unizan"), Wachovia Bank, N.A. ("Wachovia"), Sun Trust Bank ("Sun Trust"), and Fifth Third Bank, N.A. ("Fifth Third").

-2-

claims to go forward. He opined that the matter was "better suited for disposition at the summary judgment stage," but nonetheless invited the Depository Banks "to submit their consolidated arguments for dismissal of [the remaining] counts if they so choose." (*Id*. at 25.)

The Depository Banks filed their motions to dismiss on March 24, 2006. (Doc. Nos. 381, 383, 384.) Although the initial briefing was complete on May 11, 2006 (*See* Doc. No. 395), the Depository Banks filed a notice of supplemental authority on August 24, 2006. Plaintiffs were granted leave to file a brief in opposition on December 20, 2006. (Doc. No. 401.) Shortly thereafter, the Depository Banks filed a motion to strike Plaintiffs' brief in opposition on the ground that it contained matters outside the pleadings. (Doc. No. 402.) On October 31, 2007, the Court issued an Order granting, in part, and denying, in part, the Depository Banks' motion to strike. (Doc. No. 409.)[2]

On December 30, 2007, over one year and nine months after the Depository Banks' motions to dismiss had been filed and over one year and ten months after the Court dismissed the majority of claims in the Second Amended Complaint , Daniel G. Morris, counsel for the Floyds, filed numerous motions to intervene on behalf of other individuals who allegedly lost their investments as a result of Carpenter's Ponzi schemes. In total, Mr. Morris filed 104 motions, the latest of which was filed on January 16, 2008. (Doc. Nos. 414-52, 454-80, 482-506, 508-15, 517-21.) The complaints attached to the motions to intervene include the same claims asserted

---

[2]The motion to strike, and consequently the motions to dismiss, remained pending for approximately nine months due, at least in part, to the following circumstances. On March 21, 2007, the case was reassigned to the docket of Judge Lioi. However, Judge Lioi recused herself from the case on September 17, 2007, at which time the case was returned to Judge Nugent. (Doc. No. 405.) On October 9, 2007, Judge Nugent referred this case to the undersigned Magistrate Judge for general pretrial supervision. (Doc. No. 408.)

against the Drawee Banks[3] and Depository Banks in the Plaintiffs' Second Amended Complaint, despite the fact that the majority of those claims have been dismissed. The complaints also assert claims against numerous proposed drawee and depository banks that were not named as such in Plaintiffs' Second Amended Complaint. In addition, many of the complaints assert claims that are based on the proposed intervenors' investments in Rawhide and/or International, claims that the Court expressly prohibited in its Clarification Order. (Doc. No. 375.)

By the time the motions to intervene were being filed, the undersigned Magistrate Judge had substantially completed the Report and Recommendation on the Depository Banks' motions to dismiss. The Report and Recommendation was subsequently filed February 8, 2008. (Doc. No. 534.) Plaintiffs and numerous banks have filed a total of ten briefs in opposition to the motions to intervene[4] and the putative intervenors have filed a reply brief (Doc. No. 537). The motions to intervene are, therefore, ready for review.

## II. INTERVENTION UNDER THE FEDERAL RULES

Pursuant to Federal Rule of Civil Procedure 24 ("Rule 24"), a putative party may move for intervention of right or permissively. Fed. R. Civ. P. 24(a)-(b). The proposed intervenors seek to intervene of right. Alternatively, they assert that they should be granted permissive intervention. For the reasons discussed below, the proposed intervenors are not entitled to intervene of right and the circumstances do not warrant permissive intervention.

---

[3]All claims against the Drawee Banks were dismissed by Judge Nugent's February 28, 2006 Memorandum Opinion.

[4]The following parties have filed briefs in opposition: Plaintiffs (Doc. No. 531); the Depository Banks (Doc. No. 526); JP Morgan Chase Bank (Doc. No. 533), Key Bank (Doc. No. 530); U.S. Bank (Doc. No. 529); National City Bank (Doc. Nos. 507, 524); FirstMerit Bank (Doc. No. 525, 528); Charter One Bank (Doc. No. 527).

**A. Rule 24(a): Intervention of Right**

Intervention of right is proper only if the proposed intervenor establishes the following four elements: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Stupal-Thrall v. Glickman*, 226 F.3d 467, 470 (6th Cir. 2000) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)).  The proposed intervenor must establish all four elements; if one element is lacking, intervention of right is inappropriate. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

In determining whether a motion to intervene is timely, the Court must consider all relevant circumstances. *Bradley v. Miliken*, 828 F.2d 1186, 1191 (6th Cir. 1981). In particular, the Court should consider the following factors: (1) the point to which the action has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention. *Stupak-Thrall*, 226 F.3d at 473.

In light of all of these factors, the proposed intervenors' motions were not timely. The proposed intervenors filed their motions between December 30, 2007 and January 16, 2008, approximately two and a half years after this case was initiated. The proposed intervenors have been aware of this litigation and their purported interest in it since 2005, as the intervenors'

-5-

counsel has testified that he has "monitored the pleadings and motion practice of the case . . . since shortly after it was filed in 2005." (Affidavit of Daniel G. Morris, Doc. No. 415-3 at 1 ("Morris Aff.").) Further, on October 26, 2005, Mr. Morris filed a motion to intervene on behalf of the current Intervenors, the Floyds. Thus, the proposed intervenors have been aware or should have been aware of their interest in this proposed class action litigation for over two years.

The prejudice to the parties would be great if this Court were to grant the proposed intervenors' motions. The Drawee Banks were dismissed from this action in February 2006. (Doc. No. 377.) Almost two years later, the proposed intervenors seek to file complaints asserting the same claims that were previously asserted by Plaintiffs and dismissed on statute of limitations grounds and/or on the ground that they were displaced by the UCC. (Doc. No. 377 at 24.) The proposed intervenors' assertion of claims that the Court has previously dismissed on such grounds would result in unnecessary burden and expense to the original parties. This Court is particularly troubled by the fact that when Mr. Morris filed the motions to intervene and the attached complaints, he was aware that the majority of claims asserted therein were not viable.[5] This causes the Court to question the purpose for which the proposed intervenors purportedly seek to intervene, another factor relevant to the timeliness element.

The proposed intervenors assert that they seek to intervene so that they may make arguments in opposition to the dispositive motions filed by the Depository Banks. Mr. Morris has testified that he counseled the proposed intervenors to file their motions because counsel for Plaintiffs "was not making certain crucial arguments of law and public policy" and "the Court

---

[5]Plaintiffs have filed a motion to disqualify Mr. Morris as counsel in this case on this, as well as other grounds.

-6-

did not appear to feel that this case was being prosecuted with urgency." (Morris Aff. at 1.) The first of these allegations is disingenuous and the second is inappropriate.

Mr. Morris currently represents parties in this litigation, the Floyds. He could, and indeed did, file a brief in opposition to the motions to dismiss on their behalf. (Doc. No. 392.) If Mr. Morris wished to make "certain crucial arguments," against dismissal of the remaining claims in this action, he easily could have done so. There was simply no need to file 104 motions to intervene to accomplish this end. Further, despite Mr. Morris's repeated allegation that counsel for Plaintiffs has failed to make "certain crucial arguments," and that he seeks to intervene to assert those arguments, he fails to state the nature of those arguments.

According to Mr. Morris, he filed the motions to intervene also because of his belief that "the Court did not appear to feel that this case was being prosecuted with urgency." (Morris Aff. at 1.) After noting that the Depository Banks' motions to dismiss had been pending for approximately twenty-one months, Mr. Morris asserts the following: "[Mr. Morris] ran out of legal explanations for [his clients] as to this Court's apparent lack of interest in a lawsuit based upon claims like theirs. The Floyds believed that their claims were being prejudiced by this pendency. The [proposed] intervenors shared this concern and *filed their mass motions partially to bring this long pendency and their plight to the Court's attention, if nothing else*." First, the Court is aware of the long pendency of the motions to dismiss and, contrary to counsel's remark, the court does not lack interest in this case. The delay was due to a number of circumstances, including the parties' supplemental briefing, the motion to strike filed as a result of that briefing, and the transfer of the case to another judge, the subsequent return of the case to Judge Nugent, as well as the complexities of the case. Second, it is difficult to imagine why an attorney who

-7-

claims to be concerned about the pace of the proceedings in this case would file 104 motions to intervene, when doing so would be bound to slow the pace of the proceedings even further, particularly when he offers no other valid reason for filing the motions. Trying to get "the Court's attention" is not a valid reason to file a multitude of motions to intervene.

Under the circumstances, the Court easily concludes that the motions to intervene were not timely. As a motion to intervene of right cannot be granted unless all four elements are satisfied, for this reason alone, intervention of right is not appropriate. However, even if the motions were timely, the third element," impairment of the applicant's ability to protect [the applicant's] interest in the absence of intervention," and the fourth element, "inadequate representation of that interest by parties already before the court" are also clearly lacking as Mr. Morris already represents parties before the Court. Were the proposed intervenors to argue that their interests are inadequately represented by parties before the Court and that their ability to protect their interests will be impaired absent intervention, their argument would necessarily be based on the premise that *their own counsel* is inadequately representing their interests. Not surprisingly, the proposed intervenors do not make this argument. In fact, they fail to address these factors at all.

As the first, third, and fourth elements are clearly lacking, the proposed intervenors are not entitled to intervention of right under Rule 24(a).

**B. Rule 24(b): Permissive Intervention**

Under Rule 24(b), a court may permit a proposed intervenor to intervene in an action "upon timely application," where "the applicant's claim or defense and the main action have a common question of fact or law in common." Fed. R. Civ. P. 24(b). In exercising its discretion,

-8-

the court must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

As discussed above, the motions to intervene were not timely.  As a party may intervene under Rule 24(b) only "upon timely application," permissive intervention is not warranted in this case.  In addition, intervention at this time would certainly prejudice the parties, as the majority of claims the proposed intervenors seek to assert were dismissed by this Court on statute of limitations or displacement grounds over two years ago.  As to the claims that are still pending against the Depository Banks, the motions to dismiss those claims were filed almost two years ago and the briefing was complete approximately one year ago.   Furthermore, by the time the motions to intervene were filed, the undersigned Magistrate Judge had substantially completed the Report and Recommendation that was subsequently issued on February 8, 2008.  (Doc. No. 534.)  To allow intervention now would substantially delay the adjudication of the rights of the original parties.  Therefore, the proposed intervenors should not be permitted to intervene under Rule 24(b).

### III.  CONCLUSION

The proposed intervenors fail to satisfy the requirements for both intervention of right and permissive intervention.  Fed. R. Civ. P. 24(a)-(b).  Accordingly, they should not be permitted to intervene in this action.

For the foregoing reasons, the motions to intervene (Doc. Nos. 414-52, 454-80, 482-506, 508-15, 517-21) should be **DENIED**.

/s/ Nancy A. Vecchiarelli
United States Magistrate Judge

Date:   March 25, 2008

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).**  *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**