IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROL METZ, *et al.*, | ) | CASE NO. 5: 05 CV 1510 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| UNIZAN BANK, *et al.*, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendants. | ) | |

This matter is before the Court on the Named Plaintiff's Combined Motion For Class Certification and Motion to Appoint Class Counsel. (ECF #607, 615). For the reasons that follow, Plaintiff's Motion is DENIED.

### I. PROCEDURAL AND FACTUAL BACKGROUND

The Named Plaintiff, Jonas Yoder, brought this action on behalf of himself and other individuals who invested in what they believed were promissory notes issued by Serengeti Diamonds U.S.A., Inc. ("Serengeti") and Lomas de la Barra Development Corp. ("Lomas"). The purported investments were sold by James P. Carpenter, III in the years 1998 and 1999. The

Complaint[1] alleges that the purported investments were not backed by any real companies or real promissory notes, and that they were part of a Ponzi scheme orchestrated by Mr. Carpenter to defraud investors.  Part of the alleged scheme involved Mr. Carpenter opening bank accounts in the name of Serengeti and Lomas**.**  The accounts remained under his control, and allowed him to collect and deposit "investment" checks made out in the name of these two companies, and eventually to withdraw those funds for his own use.

The Complaint originally named forty-six financial institutions as defendants in this action**.**   These banks were divided into two categories: Drawee Banks and Depositary Banks.  The forty-two Drawee Banks are the banks from which the plaintiffs drew or wrote the checks made out to Serengeti and Lomas, later deposited by Mr. Carpenter.   The four remaining banks were Drawee Banks: banks which allowed Mr. Carpenter to open accounts in the name of Serengeti and Lomas and to deposit the plaintiffs' checks into those accounts.

On February 24, and 26, 2006, this Court dismissed all of the UCC claims because they were barred by the applicable statute of limitations.  Several of the common law claims (conversion, negligence, and money had and received) were also dismissed because these common law claims were superceded by the UCC.   In February of 2008, the Court dismissed all of the fraud claims against the Depositary Bank Defendants, and the claims for conspiracy to commit fraud and aiding and abetting against all of the Depositary Banks except for Unizan Bank for failure to state a claim upon which relief could be granted.  (ECF #534, 555).

The only remaining claims, therefore, are against Unizan Bank for conspiracy to commit

---

[1] Throughout this opinion "Complaint" refers to the Second Amended Class Action Complaint.

fraud and for aiding and abetting Mr. Carpenter's fraud. Plaintiffs allege that Unizan's liability stems from actions taken by Mr. Carpenter's daughter, Ashley Carpenter, who worked as a teller at Unizan. The Complaint alleges that Ashley Carpenter improperly helped her father to open the fake Lomas and Serengeti accounts, thereby allowing him to obtain possession of the plaintiffs funds. In addition, the Complaint alleges that Unizan failed to respond properly to protect the plaintiffs funds when upon discovering that Mr. Carpenter was involved in a fraudulent scheme, they forwarded the funds from the Serengeti and Lomas accounts into an account of Mr. Carpenter's choosing.

## II. DISCUSSION

### A. Standard of Review

The plaintiff bears the burden of proof in arguing that a potential class should be certified. *General Tel. Co. v. Falcon*, 457 U.S. at 161; *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). "The class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand*, 437 U.S. at 469 (quoting *Mercantile Nat'l Bank at Dallas v. Langdeau*, 371 U.S. 555, 558 (1963)). While the pleadings may be enough to determine "whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . sometimes it may be necessary for the court to probe behind the pleadings" before deciding the issue of certification. *Falcon*, 457 U.S. at 160. Thus, it is appropriate for the Court to look not only to the pleadings but also to additional exhibits and information submitted by the parties in deciding the motion for certification.

A court must perform a "rigorous analysis" of the requirements of Federal Rule of Civil Procedure 23 in deciding whether to certify a class. *Falcon*, 457 U.S. at 147; *accord Stout v. J.D. Byrider*, 47 F.3d 709, 716 (6th Cir. 2000). Rule 23 of the Federal Rules of Civil Procedure includes four prerequisites to maintaining a class action. FED. R. CIV. P. 23(a). Members of a class

> [M]ay sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Thus, the named representatives may only be certified as a class under Rule 23 if the representatives meet the requirements of numerosity, commonality, typicality, and adequacy of representation. Assuming the requirements of Rule 23(a) are met, the class action may be maintained only if it also meets the requirements of one of the subsections of Rule 23(b). FED. R. CIV. P. 23(b). Under Rule 23(b),

> An action may be maintained as a class action if . . .(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED. R. CIV. P. 23(b)(3).

> The proposed class includes
>
> All individuals who, during the time periods between and including 1998 and 1999, purchased promissory notes in either Serengeti Diamonds U.S.A., Inc. ("Serengeti") and/or in Lomas De La Barra Development Corporation, Inc., ("Lomas") and who were then injured when their checks were improperly paid into Defendant Unizan Bank accounts numbered 30179947 and 30179955.

(Motion for Class Cert. at 1).

Plaintiffs allege that the class meets the requirements of Rule 23(a) and 23(b)(3). Defendants argue, however, that the Named Plaintiff, Jonas Yoder, does not adequately represent the class, and that individualized questions of fact predominate over issues that are common to the class.

### B. Analysis

For a class action to be maintained under Rule 23(b)(3), the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). Further, the court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). According to the Supreme Court,

> [T]he predominance requirement of Rule 23(b)(3) is similar to the requirement of Rule 23(a)(3) that "claims or defenses" of the names representatives must be "typical of the claims or defenses of the class." The words "claims or defenses" in this context . . . "manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit."

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (citing *Diamond v. Charles*, 476 U.S. 54, 76-77 (1986) (O'Connor, J., concurring in part and concurring in judgment)). Further, while "[s]ubdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist . . . subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med Sys., Inc.* 754 F.3d at 1084 (quoting 1 *Newberg, supra*, §3.10, at 3-56). Essentially, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

When a court determines whether common issues predominate, it "'is under a duty to

-5-

evaluate the relationship between the common and individual issues' . . . and determine the relative weight and importance of the common and individual issues." *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 588 (W.D. Mich. 2001) (quoting 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure: Civil*, § 1778 at 518 (2d ed. 1986)).

The Court cannot determine Unizan's liability to the plaintiffs for conspiracy to commit fraud or for aiding and abetting in Mr. Carpenter's fraud without first determining whether each the individual plaintiffs was defrauded by Mr. Carpenter. The Court cannot determine whether each plaintiff was defrauded by Mr. Carpenter without determining whether or not they reasonably relied on any representations or omissions made by Mr. Carpenter (or his agents). Therefore, any resolution of these claims, based on allegations of an underlying common law fraud, will require individualized proof relating to what statements were made to each plaintiff; who made the statements; how the statements were interpreted; what other information or input affected the plaintiffs decision to invest; what independent knowledge each plaintiff had about the purported investment schemes; and other facts affecting the question of reasonable reliance.

Courts, in this and most other circuits, have held that individual issues predominate over common issues in cases where reasonable reliance is an element of the plaintiffs' claims, thereby justifying the denial of class certification. *See*, *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000)(denial of class certification upheld where resolution of the case required individual assessment of what representations were made to plaintiffs, and in what manner those representations were made); *Sprague v. General Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998)(class was decertified because claims required individualized proof of what representations were made, how they were interpreted by the plaintiffs, and whether the plaintiffs justifiably relied

-6-

on those representations); *Pettrey v. Enterprise Title Agency, Inc.*, 241 F.R.D. 268, 279 (N.D. Ohio 2006)(decertifying class where claim required individualized proof of reliance); *Lichoff v. CSX Trans., Inc.*, 2004 U.S. Dist. Lexis 21893, at *15-16 (N.D. Ohio 2004)(class certification denied because claims required proof of justifiable reliance); *see also, e.g., In re St. Jude Med., Inc. Silzone Heart Valves Prods. Liab. Litig.*, 522 F.3d 836, 838 (8th Cir. 2008); *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 225 (2nd Cir. 2008); *Heffner v. Blue Cross and Blue Shield of America, Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006); *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 435 (4th Cir. 2003); *Nagel v. ADM Investor Servs., Inc.*, 217 F.3d 436, 443 (7th Cir. 2000); *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996).

There are allegations and evidence in this case that the "investments" in this case were sold by a "sizeable network of insurance salesman[sic] and broker accomplices," (Complaint ¶136), which would further expand the individualized nature of the reasonable reliance issues in this case. Plaintiffs may have relied on representations made by Mr. Carpenter, or may have never actually communicated with him directly; they may have each communicated with different third parties, each of whom may or may not have been legal agents of Mr. Carpenter; each sale may have been based on different representations or sales pitches; and each agent or representative may have had a vastly different type of relationship with each of the individual plaintiffs.  Further, both sides concede that at least a portion of the information relied on by the investors came from oral representations which are presumptively individualized, and generally not conducive to class treatment*.  See, Lichoff v. CSX Trans., Inc*., 2004 U.S. Dist. LEXIS 21893, at * 15-16 (N.D. Ohio 2004)(*citing Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc*., 482 F.2d 880, 882 (5th Cir. 1973).

Further, after the initial adjudication of liability, evidence would need to be presented concerning alleged compensatory and punitive damages. While an individualized inquiry regarding damages is acceptable in a pattern or practice class action when common issues are resolved jointly, in this case, an individualized damages inquiry would be required in addition to individualized testimony and proof on the elements of the underlying claims. *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 343 n. 24 (1977).

Plaintiff argues that the Court must look to the nature of the fraud alleged, before it can determine whether class certification is appropriate. In support of this statement, Plaintiff cites several scenarios where courts have held that class issues predominate over individualized issues in certain types of fraud actions. First, Plaintiff contends that "[w]here there are uniform presentations of allegedly misleading information, or common omissions throughout the entire class, especially through form documents, courts have found that the element of reliance may be presumed class-wide, thereby obviating the need for an individualized inquiry of each member's reliance." *Stanich v. Traveler's Indemnity Co.* (N.D. Ohio 2008), 249 F.R.D. 506, 518 (citations omitted). This circumstance does not exist in the present case, however. The *Stanich* court elaborated by saying "the fraud here is not premised on interactions with (or representations by) agents; they are premised on standardized documents provided by Travelers (through agents) that might have led to the misimpression...." The circumstances in this case are more closely aligned with the situation distinguished by the *Stanich* court, than by the situation that led to certification in that case. The only evidence of a "standardized document" was a brochure which contained no content relating to the so-called securities or to the actual investment opportunities supposedly being offered. (Yoder Dep. Exhs. A and E). In fact, even the named Plaintiff, Mr. Yoder, admitted that he did not rely

-8-

on these brochures when making his investment decision. (Yoder Dep. At 30-32, 69-70, 74-75). Rather, Yoder testified that his investment decision was based solely on the oral representations made by a salesperson; there is no evidence that these representations were part of a script or pre-set sales pitch, or that any of the investments were made based on group advertising or other standardized representations or information.

Plaintiff also contends that reliance need not be proved by the individual plaintiffs because claims of "securities fraud" and "mail fraud" do not require proof of reliance, and Mr. Carpenter has pled guilty to both of these types of fraud. While it may be true that reliance is not a necessary element in securities or mail fraud, and that Mr. Carpenter pled guilty to these crimes... the claim in this action is not claim for securities or mail fraud. Rather, it is a common law claim for fraudulent misrepresentation; a claim which includes the element of reasonable reliance. Plaintiff, further, would have the court hold that individualized proof of reliance is not necessary because everyone in the class bought the "securities", therefore, they clearly relied on Carpenter (or his agent's) misrepresentations. This argument, however, ignores the requirement that in order to prove common law fraud, the reliance must be reasonable under all of the circumstances. There seems to be no dispute that the circumstances leading to the purchase of these "securities" varied from investor to investor. The only commonalities (aside from the actual purchase) Plaintiff has cited are the allegations that Mr. Carpenter provided written brochures for each of his agents to give to potential investors, and that each Plaintiff received interest checks after investing. There is no evidence, however, that anyone other than the named Plaintiff relied on these specific factors in making their decision to invest, nor that such reliance would have been reasonable under the circumstances known to each individual investor at the time they invested their money. Plaintiff's

ultimate conclusion, that "had a class member been told the truth, ... the class members would not have invested" is a truism that exists in most all fraud cases, but does not address the essential question of whether their reliance (i.e., their decision to purchase these "securities") was reasonable under the circumstances. In order to satisfy this element of the claim, each plaintiff would have to show individualized evidence that their reliance on the alleged misrepresentations was reasonable under all of the circumstances. In this instance, therefore, the individualized evidence necessary to prove the claim outweighs the common issues and weighs against class certification in this instance.

### III.  CONCLUSION

For the reasons stated above, the Court finds that class certification is not warranted in this instance. Individualized issues relating to reasonable reliance, combined with the individualized proof necessary to determine damages for each plaintiff if liability is established, lead to the conclusion that the class mechanism is not superior to other methods available to the parties for a fair and efficient adjudication of the controversy.  The Plaintiff's Motion for Class Certification is, therefore, DENIED.  IT IS SO ORDERED.

       /s/ Donald C. Nugent  
      DONALD C. NUGENT  
      United States District Judge

DATED:   March 23, 2009